UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re                                                                          Chapter 11

    ROBERT P. RUGGIERO SR

                 DEBTOR

                                 Case# 25-70416-las
-----------------------------------------------------------X


### NOTICE OF DEBTOR'S MOTION FOR AN ORDER: (I) AUTHORIZING THE DEBTOR TO SELL CERTAIN PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (ii) AUTHORIZING THE RETENTION OF BLUE HERON REALTY OF NAPLES AS THE DEBTOR'S REAL ESTATE BROKER; (iii) GRANTING SUCH RELIEF NUNC-PRO-TUNC TO APRIL 23, 2025; and (iv) AUTHORIZING THE DEBTOR TO RELEASE CERTAIN PROCEEDS OF SALE TO THE DEBTOR'S NON-FILING SPOUSE TOGETHER WITH RELATED RELIEF

**PLEASE TAKE NOTICE,** that upon the Application dated April 30, 2025 (the

"Application") of Robert P. Ruggiero Sr ("Debtor"), the Debtor and Debtor-in-Possession herein,

a motion will be made before the Honorable Louis A. Scarcella, United States Bankruptcy Judge,

in his courtroom at the United States Bankruptcy Court, 290 Federal Plaza, Room 970, Central

Islip, New York 11722, on the 22nd day of May 2024, at 10:00 a.m. or as soon thereafter as

counsel may be heard, for an order: pursuant to sections 105, 327, 330 and 363(b) and 363(f) of

the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy

Procedure ("Bankruptcy Rules"), authorizing the Debtor to (a) sell his interest in a certain parcel

of real property known as 8500 Naples Heritage Drive, Unit 1024 Naples, Florida (the "Florida

Property"), pursuant to a contract of sale more fully described herein and attached to the

application; (b) authorize the retention of Blue Heron Realty of Naples as the Debtor's real estate

broker for this transaction and to pay such broker a sales commission in the amount of

$21,500.00; [c] granting such relief nunc-pro-tunc to April 23, 2025, the date of the closing of

escrow of this transaction; (d) authorizing the release of the non-debtor spouse's share of the

proceeds of sale to the debtor's spouse, Joan Ruggiero. and (e) granting such other and further

relief as may be just and proper.

**PLEASE TAKE FURTHER NOTICE**, that a copy of the complete Application is on

file with the Bankruptcy Court at the address set forth below and may be reviewed during the

Court's regular business hours or may be obtained by contacting Debtor's counsel, the Law

Office of Richard S. Feinsilver, Esq., One Old Country Road, Suite 347, Carle Place, New York

11514, telephone 516-873-6330, Attention: Richard S. Feinsilver, Esq., and requesting same.

**PLEASE TAKE FURTHER NOTICE,** that,  the hearing SHALL be held in person

unless an appearance by other means is approved in advance by the Court. Those intending to

appear at the hearing must register to appear no later than two days prior to the hearing.

Instructions for registration can be found at https://ecf.nyeb.uscourts.gov/.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the Application must

be in writing, must conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of

this Court, and must be filed with the Bankruptcy Court electronically by registered users of the

Bankruptcy Court's Electronic Court Filing System and by all other parties in interest on a 3.5

disk, preferably in Portable Document Format ("PDF"), Microsoft Word or other Windows-

based word processing format with a copy to be served upon the Law Offices of Richard S.

Feinsilver, Esq., One Old Country Road, Suite 347, Carle Place, New York 11514, telephone

516-873-6330, Attention: Richard S. Feinsilver, Esq., attorney for the Debtor, and the Office of

the United States Trustee, 560 Federal Plaza, Central Islip New York 11722 Attn. Christine H

Black, Esq., so as to be received not later than 4:00 p.m. seven days prior to the hearing date.

**PLEASE TAKE FURTHER NOTICE** that the hearing on the motion may be adjourned

without notice other than an announcement in open Court.

Dated: Carle Place, New York
　　　April 30, 2025

　　　　　　　　　　By　　／s／ Richard S. Feinsilver
　　　　　　　　　　　　　Richard S. Feinsilver, Esq.
　　　　　　　　　　　　　Attorney for Debtor and Debtor in Possession
　　　　　　　　　　　　　One Old Country Road, Suite 347
　　　　　　　　　　　　　Carle Place, New York 11514
　　　　　　　　　　　　　516-873-6330

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

**Hearing Date and Time:**
**June 22, 2025 at 10:00 a.m.**

-------------------------------------------------------------x

In re:

Chapter 11

ROBERT RUGGIERO SR

Case No. 25-70614-las

                    Debtor

-------------------------------------------------------------x

### DEBTOR'S APPLICATION FOR AN ORDER: (I) AUTHORIZING THE DEBTOR TO SELL CERTAIN PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (ii) AUTHORIZING THE RETENTION OF BLUE HERON REALTY OF NAPLES AS THE DEBTOR'S REAL ESTATE BROKER; (iii) GRANTING SUCH RELIEF NUNC-PRO-TUNC TO APRIL 23, 2025; and (iv) AUTHORIZING THE DEBTOR TO RELEASE CERTAIN PROCEEDS OF SALE TO THE DEBTOR'S NON-FILING SPOUSE TOGETHER WITH RELATED RELIEF

TO:    **THE HONORABLE LOUIS A. SCARCELLA**

         **UNITED STATES BANKRUPTCY JUDGE:**

ROBERT RUGGIERO SR, the debtor and debtor-in-possession in the above-captioned proceeding (the "Debtor"), by his attorney, Richard S. Feinsilver, Esq., respectively represents as follows:

### INTRODUCTION

1.      By this Application, the Debtor seeks entry of an order, pursuant to sections 105, 327, 330 and 363(b) and 363(f) of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), authorizing the Debtor to (a) sell his interest in a certain parcel of real property known as 8500 Naples Heritage Drive, Unit 1024 Naples, Florida (the "Florida Property"), pursuant to a contract of sale more fully described herein and attached hereto as Exhibit "A", (b) authorize the retention of Blue Heron Realty of Naples as the

Debtor's real estate broker for this transaction and to pay such broker a sales commission in the amount of $21,500.00; [c] granting such relief nunc-pro-tunc to April 23, 2025, the date of the closing of escrow of this transaction; and (d) authorizing the release of the non-debtor spouse's share of the proceeds of sale to th debtor's spouse, Joan Ruggiero.

2.    As will be shown below, the Debtor's decision to sell the Property and retain its real estate broker is based on the Debtor's sound business judgment and is in the best interests of the estate and its creditors.  Accordingly, the Application should be granted in all respects.

## BACKGROUND

3.    On January 31, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is authorized to continue to operate its business and manage its property as a debtor-in- possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.    No trustee, examiner or Official Committee of Unsecured Creditors has been appointed in this proceeding.

5.    The Debtor is holds a 50% interest, as a tenant by the entirety with his spouse, Joan Ruggiero, in the Florida Property.

6.    On March 21, 2025, the Debtor received an offer to purchase the Florida Property from Vincent and Jean Quigley ("Purchaser") for the price of $430,000.00, a copy of which is annexed hereto as Exhibit "A" (the "Agreement").  To date, this amount represents the highest and best offer the Debtor has received for the Florida Property.

7.    The Property is not encumbered by a mortgage and subject only to any open real

estate taxes and condominium association common charges and any assessments associated with the transactions.

8.      At the time of the offer, the subject transaction was to be made subject to the approval of this Court as to the debtor's 50% interest.  Upon information and belief, the Debtor did not have independent real estate counsel as transactions of this nature in the State of Florida may close with the facilitation of an escrow agent.  Unbeknownst to debtor's counsel, Purchaser's lender and title insurance company moved forward with this transaction without your affiant's knowledge and  Court approval, and escrow closed on April 23, 2025.  A copy of the settlement statement is annexed hereto as Exhibit B.

9.      The debtor and his non-filing spouse received net proceeds from this transaction in the amount of $404,584.39.  The full net proceeds of sale has been deposited in the debtor's DIP account pending the hearing of this application.  Fifty percent (50%) of the net proceeds is property of the debtor's bankruptcy estate - $202,292.20.    The remaining 50% is the property of the debtor's non-filing spouse, Joan Ruggiero.

10.      In addition to the foregoing, as discussed further below, the debtor also seeks the Court's authorization to retain its real estate broker and to pay its broker its real estate commission nun-pro-tunc as the escrow agent released the commission to the broker at the closing of escrow on April 23, 2025.

## AUTHORIZATION TO SELL

11.      By this Application, the Debtor requests that this Court enter an order: (a) approving the sale of the Property to the Purchaser pursuant to the terms of the Agreement; (b) approving the

sale of the Property nunc-pro-tunc to April 23, 2025, the date of the closing of escrow; [c] authorizing the release of the non-filing spouse's distributive share of $202,292.19 to the debtor's spouse, Joan Ruggiero, and (d) granting such other and further relief as is appropriate to effectuate the sale of the Property.

12.    Bankruptcy Code Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate". Whether such sale or use should be approved is a matter subject to the Bankruptcy Court's discretion, giving due consideration to the sound business judgment of the proponent of the sale or use. See In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983).

13.    Although escrow closed on this transaction under precarious circumstances, the Debtor believes that good cause and sound business reasons existed for the Debtor to enter into the Agreement and sell the Property thereunder, in accordance with the various standards articulated by the Second Circuit in Lionel, supra. The Debtor's share of the net proceeds of sale of the Florida Property, along with the proceeds of sale of the debtor's interest in his Seaford, New York property, held in a non-debtor LLC, shall be used to fund a Chapter 11 Plan which will provide for dividends to the debtor's priority and  unsecured creditors,

14.    The sale that the Debtor proposes is based upon adequate and reasonable notice to all interested parties.  The Agreement provides for fair and reasonable terms and permits the Debtor to maximize the value of the Property for the benefit of the Estate.  All of those factors warrant approval of the sale of the Property.

## SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

15.    Pursuant to Section 363(f), property may be sold free and clear of any liens, claims, charges and interests in such property if: (I) such a sale would be permitted under applicable non-bankruptcy law; (ii) the party asserting such interest consents; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the interest would be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

16.    As stated above, the Property was encumbered only by open real estate taxes and condo assessments noted in paragraph 7 above.  Based upon the sales price for the Property as set forth in the Agreement, which is greater than the outstanding balance on the outstanding taxes and assessments the requirements of Section 363(f)(3) are met.

## AUTHORIZATION TO RETAIN AND PAY REAL ESTATE BROKER

17.    In addition to the foregoing, the Debtor also seeks authorization to retain  Blue Heron Realty of Naples, its real estate broker for this transaction, and to authorize payment of the sales commission earned by its real estate broker nunc-pro-tunc to April 23, 2025.

18.    The Debtor required the assistance of a real estate broker to market the estate's interest in the Florida Property. To that end, the Debtor made diligent inquiry into the qualifications and competence of the Broker and he is advised that by reason, ability, integrity and professional experience, that the Broker is capable of providing the required ability to successfully market the subject property. Further, the Debtor believes that Broker has no connection with any creditor or

interest party herein and represents no adverse interest to the Debtor's estate.

19.     Based upon the due diligence performed by the Debtor, Blue Heron Realty of Naples ("Blue Heron") is well qualified to represent them in these proceedings. Blue Heron is a diversified real estate consulting and advisory firm that evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate. Blue Heron has extensive experience solving complex real estate problems. Blue Heron has an excellent reputation as a leader in the real estate field and has an experienced team of real estate brokers and analysts.

20.     Debtor seeks the authorization to engage the services of Broker to market the Florida Property for the estate subject to approval of this Court nunc pro-tunc to April 23, 2025.

21.     Broker shall be entitled to a broker's commission of a maximum of five (5) percent of the amount of any proposed contract of sale provided that such contract of sale closes.

22.     The Debtor believes that Blue Heron is a disinterested party as that term is defined in 11 U.S.C. Section 101(14) since:

(a)     Broker is not a creditor of the estate, nor an equity security holder or insider;

(b)     the Debtor's shares are not publicly traded and no investment banker has been employed by or for the Debtor;

[c]     Broker is not, and has never been, an officer, director or employee of the Debtors or any investment banker

(d)     Broker does not have an interest materially adverse to the interest of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor other than that which has been disclosed herein, if any.

23.    Again, although escrow closed on this transaction under precarious circumstances, the Debtor believes that good cause and sound business reasons existed for the Debtor to retain and pay Blue Heron as its real estate broker and to pay Blue Heron for the services provided in this transaction.

### CONCLUSION

24    For all of the reasons set forth above and for the reasons to be placed on the record at the hearing on this Application, the Debtor submits that the relief sought in the Motion should be granted in full.

25.    Since no novel or complex issues of law are raised by this Application, it is respectfully submitted that the requirement of a memorandum of law pursuant to EDNY LBR 9013-1 be dispensed with.

26.    No prior application for the relief requested herein has been made by the Debtor to this or any other court.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order granting the relief requested herein, nunc-pro-tunc to April 23, 2025,  together with such other and further relief to the Debtor as the Court may deem proper.

Dated: Carle Place, New York
        April 30, 2025

                              */s/ Richard S. Feinsilver*
                              Richard S. Feinsilver, Esq.
                              One Old Country Road, Suite 347
                              Carle Place, New York 11514
                              516-8973-6330

EXHIBIT A



# SALES CONTRACT-AS IS
# (RESIDENTIAL IMPROVED PROPERTY)



**NABOR**

**EQUAL HOUSING OPPORTUNITY**

| | |
|---|---|
| SELLER: **BOB RUGGIERO** | BUYER: **VINCENT QUIGLEY** |
| SELLER: **JOAN RUGGIERO** | BUYER: **JEAN QUIGLEY** |
| ADDRESS: **8500 NAPLES HERITAGE DR #1024** | ADDRESS: **54 BAINBRIDGE ST** |
| **NAPLES FL 34112** | **MALDEN MASS 02148** |

1 UPON ACCEPTANCE OF THE OFFER OR COUNTEROFFER, SELLER has agreed to sell and BUYER has agreed to buy, UPON THE
2 FOLLOWING TERMS AND CONDITIONS, the real property hereafter legally described, including the lawn, trees, shrubbery and landscaping
3 (collectively the "Landscaping") and all non-leased fixtures (the "Real Property"), together with the following items existing on the Real Property
4 on the Effective Date: built-in appliances and beverage cooler(s)/dispenser(s); attached lighting; ceiling fan(s); built-in shelving/closet fittings;
5 wall-to-wall carpeting; integrated home automation (i.e. "smart home" components), audio-visual, home entertainment and/or home sound
6 systems including all operational components and software; hurricane/storm shutters and panels and all components; central vacuum system
7 including hoses; intercom system; water softener/purification system; built-in home generator; security/surveillance system including cameras;
8 drapery rods; television brackets (excluding televisions); decorative shutters; pool equipment; electric vehicle charging equipment including all
9 operational components; solar panels and related equipment; and **TURNKEY FURNISHED**
10 _____
11 (the Real Property and the above items are collectively referred to as the "Property", and together with the following personal property existing
12 on the Real Property on the Effective Date: refrigerator(s); range(s); dishwasher(s); microwave(s); washer(s); dryer(s); draperies, curtains,
13 blinds, shades and other window treatments; garage door opener(s)/ remote(s); access codes, keys, fobs and other access devices (including
14 to community property); pool or solar cover; child pool safety fence, and automated pool cleaning equipment, and _____
15 _____
16 _____
17 and the additional personal property, if any listed on the attached inventory or list (the "Personal Property").
18 The following items are excluded: _____
19 _____
20 Personal Property shall be free from liens and is deemed without value, left for the convenience of the parties, and transferred without consideration. The
21 unless otherwise agreed to by the parties.
22 The address of the Property is: _____ **8500 NAPLES HERITAGE DRIVE #1024 NAPLES FL 34112**
23 LEGAL DESCRIPTION OF THE PROPERTY:
24 **VERANDA TWO AT SOUTHERN LINKS A CONDO BUILDING TEN UNIT 1024**           **COLLIER**           County, Florida.
25 IF THE PROPERTY IS A COOPERATIVE PARCEL, THE "ADDENDUM TO SALES CONTRACT COOPERATIVE" IS INCORPORATED
26 HEREIN AND MADE AN INTEGRAL PART OF THIS CONTRACT.
27 If applicable, SELLER shall convey SELLER's exclusive right to use the following identified Parking Space(s) # _____
28 Garage(s) # **1024** , Cabana(s) # _____ , Storage Locker(s) # _____ , Boat Dock(s) or Slip(s) # _____ , and other
29 common elements and common areas to which SELLER has an exclusive right of use and the right to convey.
30 **1. PURCHASE PRICE:** The purchase price (U.S. currency), which is allocated to the Property
31 only unless otherwise stated, shall be payable as follows: ................................................ $ _____
32    A. Initial Deposit to be held in escrow ......................................................... $ **430,000.00**
33       **[SELECT ONE. IF NO SELECTION IS MADE, ACCOMPANIES OFFER SHALL APPLY.]** $ **20,000.00**
34       ☐ accompanies offer ☐ is due on the Effective Date ☒ is due not later than **5** days [3 days if left blank] after the Effective Date.
35       Additional Deposit to be received in escrow not later than _____ days [15 days if left blank] after the
36       Effective Date ........................................................................................... 
37    B. Proceeds of mortgage, if any [See Paragraph 4.B.] .................................... $ _____
38    C. Proceeds of SELLER mortgage, if any [see Paragraph 4.C.] ........................ $ _____
39    D. Other: _____ ........................ $ **100,000.00**
40    E. Balance of the purchase price, payable from BUYER to the closing agent
41       at closing, subject to adjustments and prorations, of approximately ............... $ _____
42       Closing funds and all deposit funds tendered to the closing agent within 15 days prior to closing shall be paid by wire transfer. All $ **310,000.00**
43       international funds shall be paid by wire transfer. All deposits are subject to collection.

©2025 Naples Area Board of REALTORS® Association of Real Estate Professionals, Inc. All Rights Reserved. (NABOR 01/01/2025)
Approved by the Marco Island Area Association of REALTORS®, Inc. and the Collier County Bar Association. Page 1 of 11
Serial#: 045199-100174-2587393
Prepared by: Robert Mackett  |  Blue Heron Realty of Naples  |  rmackett@comcast.net  :  2396#30644

Form
Simplicity

44  **2.   PERIOD OF OFFER AND COUNTEROFFER; EFFECTIVE DATE:** This offer is revoked if not accepted and the signed offer delivered to
45  offeror, by ___**NOON**___ ☐ AM ☐ PM on _____**March 22, 2025**_____ {Insert Date}. Any counteroffer is revoked if not accepted
46  and the signed counteroffer delivered to counter offeror not later than _____ days [2 days if left blank] after delivery of the counteroffer.
47  The Effective Date of this Contract shall be the last date either SELLER or BUYER signs or initials this Contract. ALL CHANGES TO THE OFFER
48  OR COUNTEROFFER MUST BE INITIALED AND DATED. THE LATEST DATE SET FORTH ON THIS CONTRACT BY EITHER PARTY'S
49  SIGNATURE OR INITIALS SHALL BE THE EFFECTIVE DATE.

50  **3.   CLOSING DATE; TIME OF THE ESSENCE; CLOSING LOCATION; CLOSING AGENT; POSSESSION:** Closing shall occur on
51  _____**APRIL 23 2025**_____ {Insert Date} (the "Closing Date"). **Time is of the essence as to the Closing Date.** Closing shall occur
52  in the county where the Property is located, at an office designated by the closing agent, who shall be selected by BUYER. As of the closing,
53  BUYER shall be the legal owner of the Property, and SELLER shall vacate and give access and possession of the Property. SELLER shall leave
54  the dwelling(s) on the Property in broom-clean condition and the entire Property free of debris.

55  **4.   METHOD OF PAYMENT [SELECT ONE. IF NO SELECTION IS MADE, A. SHALL APPLY]:**

56  ☐ **A. CASH/FINANCING WITHOUT CONTINGENCY:** BUYER will pay cash, but may obtain a loan for the purchase of the Property; however,
57  there is no financing contingency. If BUYER elects to finance BUYER's purchase of the Property through a creditor/lender, BUYER shall be
58  **required to timely perform all BUYER's obligations under the Contract and to close on the Closing Date, notwithstanding any terms and**
59  **conditions imposed by BUYER's creditor/lender and/or any applicable disclosure, delivery and compliance requirements of the Consumer**
60  **Financial Protection Bureau Integrated Mortgage Disclosure Rule ("CFPB Rule");**

61  ☒ **B. FINANCING CONTINGENCY:** Subject to the provisions of this paragraph, BUYER's obligation to purchase the Property is contingent upon
62  BUYER obtaining a loan, unless waived by BUYER as set forth below, in the amount shown in 1.B. above, to be secured by a mortgage on the
63  Property at **[IF NO SELECTIONS ARE MADE, (1) SHALL APPLY]:** ☒ (1) Conventional ☐ (2) VA ☐ (3) FHA ☐ (4) Other _____
64  **[If VA OR FHA, the "Addendum to Sales Contract VA/FHA Financing" should be attached hereto and made a part hereof],**
65  at ☒ (1) an initial or ☐ (2) fixed rate of interest not exceeding _____**7.5%**_____ per year, for an amortized term of _____ years [30 years if left blank].
66  BUYER shall make loan application as defined in the CFPB Rule ("Loan Application") not later than _____ days after the Effective Date [5 days
67  if left blank], and shall make a continuing good faith and diligent effort to obtain said loan and comply with all applicable requirements of the
68  creditor/lender and CFPB Rule relating to the loan process. If BUYER fails to waive this financing contingency on or before
69  _____**April 16, 2025**_____ {Insert Date} [45 days after the Effective Date if left blank], either SELLER or BUYER may terminate
70  this Contract at any time. BUYER's termination under this contingency must be accompanied by either (i) a statement of adverse credit action
71  issued by a creditor/lender confirming that mortgage financing on the terms set forth in this Contract was denied on grounds that either the
72  Property was unacceptable to the creditor/lender or the BUYER financially failed to qualify for said financing terms, or (ii) other evidence from
73  the creditor/lender that BUYER has made loan Application and made diligent and good faith efforts to meet all applicable requirements of the
74  creditor/lender and the CFPB Rule, but has received neither loan approval nor loan denial from the creditor/lender. SELLER's right to terminate
75  shall cease to exist if BUYER waives this financing contingency prior to SELLER giving BUYER notice of termination. **IF BUYER WAIVES THIS**
76  **CONTINGENCY AND IS UNABLE TO CLOSE ON THE CLOSING DATE DUE TO A DELAY CAUSED SOLELY BY THE CREDITOR/LENDER**
77  **AND/OR NECESSITATED BY THE CFPB RULE, BUYER MAY EXTEND THE CLOSING DATE UP TO 10 DAYS FOR CFPB RULE**
78  **COMPLIANCE AND TO ACCOMMODATE RECEIPT AND EXECUTION OF THE LOAN PACKAGE AND LOAN FUNDING.** Delivery of
79  documentation evidencing loan commitment or loan approval shall not constitute a waiver of the financing contingency. BUYER
80  acknowledges that once BUYER waives this financing contingency, BUYER's deposit monies are no longer refundable under this
81  Paragraph 4.

82  ☐ **C. SELLER FINANCING.** The "Addendum to Sales Contract Seller Financing" is attached hereto and made a part hereof.

83  **5.   CDD/MSTU SPECIAL TAX DISTRICTS:** The Property ☒ is ☐ is not located within a Community Development District ("CDD") or Municipal
84  Service or Benefit Taxing Unit ("MSTU"). BUYER will at closing assume any outstanding capital assessment balance. If the Property is located
85  **within a CDD or MSTU, and if there is any outstanding capital balance, BUYER should not execute this Contract until BUYER has**
86  **received and signed the "CDD/MSTU Assessments Disclosure" or similar written disclosure from SELLER setting forth the**
87  **approximate outstanding capital assessment balance, which BUYER will assume at closing.**

88  **6.   ASSOCIATION AND GOVERNMENTALLY IMPOSED LIENS AND SPECIAL ASSESSMENTS:** SELLER shall pay the full amount of any
89  Association special assessments and governmentally imposed liens or special assessments (other than CDD/MSTU assessments which are
90  addressed in Paragraph 5) (each a "Special Assessment"), which, on or before the Effective Date, are a lien or a special assessment that is
91  certain as to (a) the identity of the lienor or assessor, and (b) the property subject to the lien or special assessment, and (c) the amount of the
92  lien or special assessment. Notwithstanding the above, if a Special Assessment is levied as of the Effective Date and may be paid in installments
93  (CHECK ONE): ☐ SELLER ☒ BUYER (if left blank, then SELLER) shall pay all installments due after the Closing Date. If SELLER is
94  selected, SELLER shall pay the applicable Special Assessment in full prior to or at the time of closing unless the Special Assessment is not

**SALES CONTRACT-AS IS (RESIDENTIAL IMPROVED PROPERTY) (NABOR 01/01/2025)** Page 2 of 11

Serial#: 072396-100174-2500997
Prepared by: Robert Mackett | Blue Heron Realty of Naples | rmackett@comcast.net | 2396436644

Form
Simplicity

95  payable because of Association requirements, in which case the amount of the Special Assessment shall be credited from SELLER to BUYER
96  at closing. If, as of the Effective Date, there are any pending liens or special assessments (other than a Special Assessment described above)
97  which are not SELLER's obligation as set forth above and which were not disclosed in writing to BUYER by SELLER prior to or concurrent with
98  the execution of this Contract, and which exceed 1% of the purchase price, BUYER may terminate this Contract, unless SELLER agrees in
99  writing to pay the portion of such pending liens or special assessments in excess of 1% of the purchase price, and SELLER agrees to pay into
100 escrow at closing a reasonable sum to insure that the excess will be paid.

101 **7.  EXISTING LEASES WITH POST-CLOSING OCCUPANCY:** ☐ If this box is checked, the Property is subject to one or more leases and/or
102 rental agreements (collectively "Leases") in effect as of the Effective Date with occupancy occurring after the closing. SELLER shall deliver
103 complete information regarding the terms of said Leases and copies of all written Leases (collectively the "Lease Information") to BUYER not
104 later than 5 days after the Effective Date. BUYER shall have 5 days after receipt of the Lease Information to review the same, and may terminate
105 this Contract not later than 5 days after receipt of the Lease Information, if in BUYER's sole discretion, the Lease Information is unacceptable. If
106 SELLER fails to timely deliver the Lease Information. BUYER may terminate this Contract not later than 10 days after the Effective Date.

107 **8.  AS IS; DUE DILIGENCE PERIOD; INSPECTIONS:** BUYER shall have ___7___ days [15 days if left blank] after the Effective Date (the "Due
108 Diligence Period") to have the Property, the Systems and Equipment, and Personal Property evaluated at BUYER's expense and may, but is not
109 required to, utilize the services of any professional or licensed inspector(s) to conduct inspection(s). If BUYER determines, in BUYER's sole
110 discretion, that the Property, Systems and Equipment, or Personal Property is not acceptable to BUYER for any reason, BUYER may terminate this
111 Contract prior to expiration of the Due Diligence Period. If BUYER does not elect to terminate the Contract, SELLER shall have no obligation to make
112 any repairs or replacements to the Property, Systems and Equipment or Personal Property, except as stated in Standard D.2.a. BUYER's right to
113 terminate hereunder has been bargained for between the parties, and each party acknowledges full and adequate consideration has been received
114 for this provision. The Property, Systems and Equipment, appurtenances, and Personal Property being sold to BUYER will be conveyed to BUYER
115 in their "AS IS" condition as of the Effective Date. BUYER's failure to terminate the Contract in the manner provided herein shall constitute a waiver
116 of the right to terminate under the provisions of this paragraph. All inspections shall be non-invasive and shall not entail any perforation or removal
117 of structural material unless approved in advance by SELLER. Upon reasonable notice, SELLER shall provide access and utilities service to the
118 Property to facilitate the inspections. BUYER shall repair any and all damage to the Property, Systems and Equipment and Personal Property
119 resulting from or caused by the inspections and shall otherwise return the Property, Systems and Equipment and Personal Property to its condition
120 prior to the inspections. BUYER will indemnify and hold SELLER harmless from and against all losses, damages, costs, claims and expenses of any
121 nature, including attorney fees (collectively "Losses"). and from and against any liability to any person arising from, out of or in connection with the
122 inspections, except as to Losses resulting from negligence or intentional acts or omissions of SELLER. For purposes of this Contract, the term
123 "Systems and Equipment" shall mean all appliances and equipment, including fire sprinkler, irrigation, well, septic, heating, cooling, electrical,
124 plumbing and security systems: mechanical components: roof (including fascia and soffits); ceilings: walls: windows and doors (including overhead
125 door(s)); foundation; swimming pool, spa and pool/spa deck(s), and pool/lanai enclosure(s); seawall: dock(s); boat lifts/davits and related electrical
126 and mechanical components, if any.

127
## REAL ESTATE TRANSACTION STANDARDS
128 THE REAL ESTATE TRANSACTION STANDARDS SHOULD NOT BE REVISED OR MODIFIED EXCEPT IN OTHER TERMS AND
129 CONDITIONS AND/OR BY ADDENDUM/ADDENDA.
130

131 **STANDARD A—TITLE; TITLING INSTRUCTIONS; ASSIGNMENT; TAX DEFERRED EXCHANGE.**
132 **1.  MARKETABLE TITLE:** Title to the Property shall be good and marketable according to the Uniform Title Standards promulgated by the
133 Florida Bar, and have legal access, subject only to the following exceptions: (a) ad valorem and non-ad valorem real property taxes for the year
134 of closing and subsequent years; (b) zoning, building code and other use restrictions imposed by governmental authority; (c) outstanding oil, gas
135 and mineral interests of record, if any: and (d) restrictions, reservations and easements common to the subdivision (or condominium, if
136 applicable), provided that none of the foregoing shall prevent use of the Property for residential purposes.
137 **2.  TITLING INSTRUCTIONS FROM BUYER; ASSIGNMENT:** Not later than 15 days prior to the Closing Date, BUYER shall deliver to SELLER
138 the name(s), address, manner in which title will be taken, and a copy of any assignment executed by BUYER. No assignment shall release
139 BUYER from the obligations of this Contract unless SELLER consents in writing to such release.
140 **3.  TAX DEFERRED EXCHANGE:** If either party intends to treat this transaction as a tax-deferred exchange under I.R.C. Section 1031, the
141 other party shall cooperate in accomplishing the exchange, and consents to the assignment of this Contract to a qualified exchange intermediary
142 for that purpose, provided there is no additional cost or delay in closing and the exchanger is not released from liability under this Contract.
143 **STANDARD B—TITLE EVIDENCE; EXAMINATION; DEFECTS; LEGAL ACCESS; CLEARANCE.** Not later than 10 days after the Effective
144 Date, SELLER shall furnish to BUYER any SELLER's owner's title insurance policy in Seller's possession. BUYER shall have 30 days after the
145 Effective Date ("Examination Period") for examination of title and determination of legal access. BUYER's obligation to purchase is conditioned
146 on the Property having legal access to and from a public right of way sufficient for residential use. If title is found defective or legal access is
147 found to be lacking, BUYER shall, within the Examination Period, notify SELLER specifying the title defect(s) or lack of legal access, and furnish

148 copies of the title evidence and instruments evidencing such title defect(s) or lack of legal access. If the title defect(s) render(s) title unmarketable,
149 or if SELLER cannot deliver possession, or if there is no legal access, SELLER shall have 30 days after receipt of said notice and copies from
150 BUYER (the "Clearance Period") to clear or remove such title defect(s), deliver possession, and/or provide legal access, at SELLER's expense.
151 SELLER will use diligent effort to correct the title defect(s), deliver possession, and/or provide legal access within the Clearance Period,
152 including the bringing of necessary suits. If the Closing Date is prior to the expiration of the Clearance Period, then the Closing Date shall be extended
153 until the earlier of (i) 5 days after SELLER corrects the title defect(s), delivers possession, and/or provides legal access or (ii) 5 days after the
154 expiration of the Clearance Period. SELLER shall not be liable to BUYER for damages if SELLER cannot render title marketable, deliver
155 possession and/or provide legal access. If BUYER does not clear or remove the title defect(s), deliver possession or provide legal access within
156 the Clearance Period, BUYER may elect either to accept such title, possession, and/or access as SELLER can provide or to terminate this
157 Contract by giving SELLER notice of such election not later than 5 days after expiration of the Clearance Period. If BUYER makes no such
158 election, BUYER shall be deemed to have accepted such title, possession and access as SELLER can provide and close within the later of (i)
159 10 days after expiration of the Clearance Period or (ii) the Closing Date. A monetary lien against the Property shall not constitute a title defect if
160 said lien can be paid and satisfied from SELLER's proceeds at closing.
161 Notwithstanding the provisions of Standard B, BUYER may perform or procure an updated examination of title and determination of legal access
162 ("Title Update") no later than the Closing Date. If the Title Update discloses any new requirement, defect, encumbrance or other adverse matter
163 that: (i) renders title defective or unmarketable or causes a lack of legal access; and (ii) did not exist or arise as of the Effective Date (a "New
164 Title Defect"), then BUYER shall notify SELLER specifying the New Title Defect and furnish copies of the instruments evidencing the New Title
165 Defect(s) and any New Title Defect shall be treated as an original title defect under the immediately preceding paragraph, with the 30 day
166 Clearance Period commencing on the date that BUYER provides notification and copies to SELLER of the New Title Defect.
167 **STANDARD C—SURVEY; COASTAL CONSTRUCTION CONTROL LINE.**
168 **1.   SURVEY AND SURVEY OBJECTIONS:** Unless the Property is a condominium or cooperative unit, SELLER shall furnish to BUYER, not
169 later than 10 days after the Effective Date, a complete copy of any survey of the Property in SELLER's possession and which has been certified
170 to SELLER (together with flood elevation certificate, if applicable). If to SELLER's knowledge there are no improvements or encroachments
171 currently located upon the Property other than as shown on the survey provided by SELLER, SELLER shall execute an affidavit of "no change"
172 affirming same to BUYER. BUYER may, at BUYER's expense, have the Property surveyed not later than 5 days prior to the Closing Date
173 ("Survey Period"). If the survey, as certified by a registered Florida surveyor, correctly shows: (a) an encroachment onto the Property; (b) that
174 an improvement located on the Property projects onto lands of others; (c) an improvement on the Property or the Real Property violates a zoning,
175 building or other governmental use restriction; (d) an improvement on the Property violates any recorded covenant or restriction, or any covenant
176 of this Contract: (e) the Real Property does not meet the applicable development standards of the local government having jurisdiction over the
177 Real Property (and is not otherwise deemed legally non-confirming) or (f) lack of legal access (collectively "Survey Objections"), BUYER may,
178 within the Survey Period, notify SELLER of the Survey Objections and shall furnish a copy of the survey. The Survey Objections shall be treated
179 as a title defect(s) pursuant to Standard B above, with the Clearance Period commencing on the date of the Survey Objections are delivered to
180 SELLER. If BUYER fails to obtain a survey within the Survey Period, BUYER waives any right to object to any matters which might have been
181 shown on a survey. If BUYER fails to make any Survey Objections within the Survey Period, BUYER waives any Survey Objections
182 **2.   COASTAL CONSTRUCTION CONTROL LINE:** (a) If any portion of the Property lies seaward of the Coastal Construction Control Line,
183 Florida law requires the following disclosure: The property being purchased may be subject to coastal erosion and to federal, state or local
184 regulations that govern coastal property, including the delineation of the coastal construction control line, rigid coastal protection structures,
185 beach nourishment, and the protection of marine turtles. Additional information can be obtained from the Florida Department of Environmental
186 Protection, including whether there are significant erosion conditions associated with the shoreline of the property being purchased. (b) If any
187 portion of the Property lies seaward of the Coastal Construction Control Line. BUYER waives the right to receive a survey or affidavit from
188 SELLER delineating said line upon the Property.
189 **STANDARD D—DISCLOSURES; INSPECTIONS AND REMEDIES; ELECTION AND RESPONSE; SELLER'S MAINTENANCE**
190 **OBLIGATION; WALK-THROUGH INSPECTION; RISK OF LOSS.**
191 **1.   DISCLOSURES**
192            **A.      SELLER DISCLOSURES:** Except as disclosed to and acknowledged by BUYER prior to BUYER's execution of any offer (or
193 counteroffer, as applicable):
194            **1.      GENERAL:** SELLER knows of no facts or conditions materially affecting the value of the Property, except those
195 which are readily observable by BUYER.
196            **2.      WETLANDS; SUITABILITY:** SELLER does not know of any portion of the Property having been determined to be
197 wetlands, or of any other condition or circumstance adversely affecting the Property which might impair its suitability for residential use or
198 construction.
199            **3.      PERMITS AND VIOLATIONS:** SELLER does not know of any improvements to the Property which were made
200 without proper permit(s) or certificate(s) of occupancy/substantial completion (where required) or of any existing violations of local ordinances or
201 codes, or of any pending code enforcement violations or proceedings affecting the Property.
202            **4.      ZONING:** SELLER has not commenced any proceedings to change the current zoning classification of the
203 Property, nor will SELLER initiate any such proceedings. SELLER has not received notice from any third party(ies) of any proceedings which
204 would affect the current zoning classification of the Property. Should SELLER receive any such notice, SELLER will promptly notify BUYER of

**SALES CONTRACT-AS IS (RESIDENTIAL IMPROVED PROPERTY) (NABOR 01/01/2025)** Page 4 of 11
Serial#: 072396-100174-2586997
Prepared by: Robert Mackett | Blue Heron Realty of Naples | rmackett@comcast.net | 2386436644

Form
Simplicity

205 same, and in that event, BUYER may terminate this Contract by giving SELLER notice of said termination not later than 5 days after receipt of
206 said notice.

207     **5.**     **PAST INSURANCE CLAIMS:** SELLER is unaware of any past insurance claims on the Property which would
208 increase the cost or restrict the availability of insurance coverage for the Property.

209     **B.**     **MANDATORY DISCLOSURES:** The following disclosures are required by governing Florida law and are hereby made a part
210 of this Contract:

211     **1.**     **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in
212 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines
213 have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health
214 department.

215     **2.**     **LEAD BASED PAINT/PAINT HAZARDS:** If construction of the residence on the Property was commenced prior
216 to 1978, SELLER is required to complete, and SELLER and BUYER are required to sign and attach to this Contract, the "Addendum to Sales
217 Contract Lead-Based Paint and/or Lead-Based Paint Hazards"

218     **3.**     **MOLD:** In Florida, mold is commonly found both indoors and outdoors. Interior infestation by certain mold may
219 cause property damage and health problems for some persons.

220     **4.**     **PROPERTY TAX DISCLOSURE:** BUYER should not rely on the SELLER's current property taxes as the amount
221 of property taxes that BUYER may be obligated to pay in the year subsequent to purchase. A change of ownership or property improvements
222 triggers reassessments of the property that could result in higher property taxes. If you have any questions concerning valuation, contact the
223 county property appraiser's office for information.

224     **5.**     **FLOOD DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED**
225 **AND READ THE "REQUIRED FLOOD INSURANCE DISCLOSURE."**

226     **C.**     **ADVISEMENTS AND ACKNOWLEDGMENTS:**

227     **1.**     **INSURANCE AVAILABILTY AND COST:** Prior to signing this Contract, BUYER is advised to consult with
228 insurance professionals to ascertain the availability and cost of casualty, wind, and/or flood insurance, and further that insurance may be required
229 if BUYER is financing the purchase.

230     **2.**     **SQUARE FOOTAGE:** BUYER is aware that any reference to the square footage and size of the Property and
231 improvements thereon is approximate and is not warranted and should be independently verified by BUYER prior to execution of this Contract.

232     **3.**     **MANDATORY/BUNDLED CLUB MEMBERSHIP:** The Property is or may be located in a community with a
233 mandatory or bundled club membership, and BUYER may be required to pay certain initiation and other fees, dues and/or use charges imposed
234 by the club. If BUYER has questions or requires additional information pertaining to applicable club requirements and/or fees, dues and charges.
235 BUYER should contact said club.

236     **4.**     **COMMUNITY INVESTIGATION:** BUYER is advised that any Association documents received by BUYER may not
237 include important information about the community(ies) where the Property is located, including without limitation ambient noise levels, pending
238 foreclosures, types and amounts of insurance coverage, current budget and reserve amounts, and status of delinquent assessments; ownership,
239 financial and membership status of private clubs, golf course(s), marina(s), and other amenities; the status of the developer(s) if the community
240 or any portion thereof is developer-controlled; and facts about the surrounding community(ies), school districts and public and government
241 infrastructure plans. SELLER by signing this Contract designates BUYER as SELLER's representative for purposes of obtaining said information.

242     **5.**     **ENERGY EFFICIENCY:** BUYER acknowledges receipt of the Department of Community Affairs brochure on the
243 Florida Building Energy Efficiency Rating System.

244     **6.**     **FIRE SPRINKLER/SAFETY SYSTEM RETROFIT:** If the Property is located in a condominium or cooperative
245 building greater than 75 feet in height requiring retrofit for fire sprinklers or other life safety systems as shown on the list created by the local
246 district fire marshal, BUYER may terminate this Contract within the statutory rescission period set forth in Standard I.

247     **7.**     **CODE COMPLIANCE BROCHURE:** If the Property is located in unincorporated Collier County, SELLER and
248 BUYER acknowledge receipt of the Collier County Code Compliance Residential Program brochure.

249     **8.**     **FAIR HOUSING BROCHURE:** BUYER and SELLER acknowledge receipt of the Equal Opportunity in Housing
250 brochure provided by the National Association of Realtors advising the parties of their rights under the federal Fair Housing Act as well as other
251 federal, state and local laws.

252     **9.**     **FEMA 50% RULE:** BUYER is advised that if BUYER intends to make substantial improvements to the Real
253 Property, BUYER's changes may be subject to FEMA regulations limiting improvements to 50% of the value of the existing structure. The
254 substantial improvement requirement applies to any reconstruction, rehabilitation, addition, or other improvement of an existing structure if the
255 lowest living floor elevation is below the Base Flood Elevation as shown on the Flood Insurance Rate Map (FIRM) plus 1 foot AND the cost of
256 the work equals or exceeds 50% of the market value of the structure before the start of construction. It is recommended that BUYER contact the
257 floodplain coordinator at the applicable local government with permitting jurisdiction for further information.

258

259     **2.**     **INSPECTION AND MAINTENANCE:**
260     **a. SELLER'S MAINTENANCE OBLIGATION:** SELLER shall maintain the Property, (which for reference includes the Landscaping and
261 Systems and Equipment) and Personal Property in the condition existing on the Effective Date until the Closing Date or date of possession.

**SALES CONTRACT-AS IS (RESIDENTIAL IMPROVED PROPERTY) (NABOR 01/01/2025) Page 5 of 11**

Serial#: 072396-100174-2586997
Prepared by: Robert Mackett | Blue Heron Realty of Naples | rmackett@comcast.net / 2396436644

Form
Simplicity

262 whichever is earlier, except for ordinary wear and tear (collectively "SELLER's Maintenance Obligation"). The scope of SELLER's Maintenance
263 Obligation shall not include or extend to any item for which SELLER has no maintenance, repair or replacement obligation under the governing
264 documents of any applicable Association. Whether existing prior to or after the Effective Date, SELLER's Maintenance Obligation shall include
265 curing any and all violations documented by the Association(s) against the Property prior to the Closing Date. If SELLER fails to perform
266 SELLER's Maintenance Obligation as required in this Standard, SELLER shall, at BUYER's request, either (i) perform appropriate repair,
267 replacement, treatment mitigation or other remedial action necessary to comply with SELLER's Maintenance Obligation with respect to the Property
268 and/or repair or replace the Personal Property to the condition required by this Standard prior to the Closing Date (collectively, "Maintenance
269 Obligation Remedial Action"), or (ii) provide a credit acceptable to BUYER at closing equivalent to the estimated cost of the Maintenance
270 Obligation Remedial Action required by this Standard. If SELLER is obligated to perform the Maintenance Obligation Remedial Action and fails
271 to do so prior to the Closing Date and the parties are unable to agree upon a credit amount, SELLER shall escrow at closing a sum equivalent
272 to 200% of the estimated costs for: (A) payment to appropriately licensed contractor(s) performing the Maintenance Obligation Remedial Action;
273 and (B) post-closing fines levied by the Association providing the notice of violation. The escrow sum is not a cap on SELLER's liability for
274 completion of the Maintenance Obligation Remedial Action.
275 **b. WALK-THROUGH INSPECTION:** BUYER (or a designated representative) may conduct a walk-through inspection of the Property prior
276 to closing or possession, whichever is earlier, to confirm: (1) that the items which are being conveyed as part of this Contract remain on the Property, (2)
277 that the items which are not being conveyed as part of this Contract have been removed from the Property, and (3) that SELLER has performed
278 SELLER's Maintenance Obligation and, if applicable, any Maintenance Obligation Remedial Action as required in Standard D.2.a.above. Upon
279 reasonable notice, SELLER shall provide access and utilities service to the Property to facilitate the walk-through inspection.
280 **3.    RISK OF LOSS; CASUALTY; INSURANCE AND SERVICES ESSENTIAL FOR CLOSING; LIMITED PURPOSE INSPECTION RIGHTS;**
281 **EXTREME WEATHER CONDITION:**
282     **(a)    RISK OF LOSS.** In the event of fire, flood, storm, extreme weather conditions or other casualty occurring between the
283 Effective Date of this Contract and the Closing Date or date of possession, whichever is earlier ("Casualty"), any loss or damage to the Property
284 (which for reference includes the Landscaping and Systems and Equipment) or Personal Property caused by a Casualty shall be at Seller's
285 sole risk and expense. SELLER shall maintain all existing, wind, hurricane and flood insurance until disbursement.
286     **(b)    AVAILABILITY OF INSURANCE AND SERVICES ESSENTIAL FOR CLOSING.** If, as a result of the Casualty, BUYER is
287 unable to obtain hazard, flood, wind or homeowner's insurance or is unable to obtain such insurance at a reasonable rate and/or if services
288 essential for closing are not available by the Closing Date as a result of the Casualty, BUYER may delay the Closing Date until a date that is up
289 to 5 days after said coverage becomes available and services essential for closing are restored. If said coverage is not available and/or said
290 essential services are not restored for a period of 30 continuous days after the Casualty date, either SELLER or BUYER may terminate this
291 Contract not later than 35 days after the Casualty date.
292     **(c)    PROPERTY RENDERED UNINSURABLE OR UNFIT FOR HABITATION.** If any such Casualty loss or damage renders the
293 Property on the Closing Date either: (1) uninsurable under the residential underwriting guidelines of the Citizens Property Insurance Corporation,
294 as documented in a letter from SELLER's or BUYER's insurance agent or underwriter; or (2) unfit for habitation under state or local building
295 codes; as documented in a letter issued by the governmental agency having jurisdiction over said matters pertaining to the Property, then either
296 BUYER or SELLER may terminate this Contract no later than 5 days after receipt of said documentation.
297     **(d)    LANDSCAPING.** Notwithstanding the provisions of Standard D.2.a or Standard D.3.(a), if any loss or damage to the
298 Landscaping is caused by a Casualty or other event beyond SELLER's control, SELLER's financial obligation for restoration of the Landscaping
299 to the condition it existed on the Effective Date (to the extent reasonably practicable based on availability of substantially equivalent replacement
300 Landscaping) shall not exceed 1% of the purchase price.
301     **(e)    BUYER LIMITED PURPOSE POST-CASUALTY INSPECTION RIGHTS.** Not later than 5 days after SELLER notifies
302 BUYER that safe access to the Property is available following a Casualty, BUYER and/or BUYER's designated representative(s) may conduct
303 an inspection of the Property (in addition to any walk-through inspection that BUYER may have conducted prior to the Casualty and/or is entitled
304 to prior to closing), for the limited purpose of identifying any loss or damage to the Property, the Personal Property and Systems and Equipment
305 as a result of the Casualty ("Post-Casualty Inspection"). SELLER shall provide access and utilities service to the Property to the greatest extent
306 possible based on the availability of such service to facilitate the Post-Casualty Inspection.
307     **(f)    EXTREME WEATHER CONDITION:** If, due to a pending or threatened hurricane, tropical storm, or other extreme weather
308 condition, BUYER is unable to obtain hazard, flood, wind or homeowners/casualty insurance coverage at a reasonable rate for closing, or if
309 services essential for closing are not available, BUYER or SELLER may delay the Closing Date until a date that is not more than 5 days after
310 insurance coverage becomes available and/or services essential for closing are restored. If such insurance coverage and/or services essential
311 for closing remain unavailable for a period of 30 continuous days, then either SELLER or BUYER may terminate the Contract not later than 35
312 days after such extreme weather condition rendered insurance and/or services essential for closing unavailable.
313 **STANDARD E—SELLER's INSTRUMENTS AND EXPENSES.** SELLER shall pay for and provide, when applicable: (1) the title evidence; (2) if
314 the Property is located in Lee or Charlotte County, the premium for the owner's title insurance policy issued by the closing agent selected by
315 BUYER, and the charges for title search and title continuation through the date of deed recording; (3) preparation of statutory warranty deed
316 (or special warranty deed if SELLER is a fiduciary), bill of sale with warranties of ownership and freedom from encumbrances, Association
317 estoppel letter(s), broker compensation verifications; tenant estoppel letter(s), copy(ies) and assignment(s) of lease(s), and an affidavit regarding
318 liens, possession, and withholding under FIRPTA, in a form sufficient to allow "gap" coverage by title insurance; (4) mortgage payoff letter from
319 existing creditor/lender(s); (5) documentary stamp tax on deed; (6) real estate brokerage compensation contractually agreed to by SELLER (to
320 be disbursed by closing agent at closing); (7) utility estoppel fees, outstanding balances due, and utility services to the Closing Date; (8) any
321 Association special assessments and governmentally imposed liens or special assessments which are SELLER's obligation under Paragraph 6.

**SALES CONTRACT-AS IS (RESIDENTIAL IMPROVED PROPERTY) (NABOR 01/01/2025) Page 6 of 11**

322 and any and all outstanding balances or fines due to any Association(s) governing the Property: (9) SELLER's attorney fees, (10) if SELLER is
323 subject to withholding under FIRPTA, charges associated with preparing the 8288 and 8288A and/or 8288B withholding certificate application
324 and/or tax return related thereto, and reasonable fees to BUYER's attorney or closing agent for escrow, disbursement and remittance of withheld
325 funds; (11) reimbursement of prepaid estoppel fees and other costs advanced on behalf of SELLER; (12) wire fees associated with transfer(s)
326 of SELLER proceeds and payoffs; (13) assignment of insurance and service contracts which BUYER elects to assume at closing; and, (14) all
327 current Association and property management company contact information, any required Association application forms, and all statutorily
328 required Association documents.

329 **STANDARD F—BUYER'S INSTRUMENTS AND EXPENSES.** BUYER shall pay for and provide, when applicable, including any sales tax due
330 thereon: (1) recording fee for deed; (2) all costs of any institutional loan secured by BUYER; (3) the premium for creditor/lender title insurance
331 policy, and if the Property is located in Collier County, the premium for the owner's title insurance policy issued by the closing agent selected by
332 BUYER and the charges for title search, and title continuation through the date of deed recording; (4) recording membership approval; (5) survey
333 charges; (6) Association membership transfer fee; (7) Association resale transfer fee/capital contribution; (8) any pending Association special
334 assessments and governmentally imposed liens or special assessments which are not SELLER's obligation under Paragraph 6; (9) real estate
335 brokerage compensation contractually agreed to by BUYER (to be disbursed by closing agent at closing); (10) BUYER's attorney fees;
336 (11) BUYER shall promptly pay and indemnify and hold SELLER harmless against any claims or liens upon the Property for surveyor or other
337 services furnished to the Property at the request of BUYER; (12) code enforcement/municipal lien search fees; (13) reimbursement of prepaid
338 application fees and other costs advanced on behalf of BUYER; (14) reimbursement to the closing agent of any deposit and closing funds
339 shortages due to deduction of wire fees; and (15) submerged land lease assignment and transfer fees, including any applicable sales tax.

340 **STANDARD G—PRORATIONS; CREDITS.** These items will be prorated as of the Closing Date, with BUYER charged with and entitled to the
341 Closing Date, or the possession date, whichever is earlier: (1) real and personal property taxes based on the current year, if available. If not
342 available, the taxes shall be based on the TRIM "Your Taxes This Year if PROPOSED Budget is Adopted" amount and current year non-ad
343 valorem amount(s), if available; otherwise the prior year non-ad valorem amounts. If neither the current year tax nor TRIM amounts are available,
344 the taxes shall be based on the prior year's bill (without discount or exemptions no longer available in the year of closing). If completed
345 improvements exist on the Property for which a certificate of occupancy was issued as of January 1st of the year of closing, which did not exist
346 on January 1st of the prior year, taxes shall be estimated for proration by applying the current year millage rate to the current year taxable value
347 of the Property. If the current year millage rate is not fixed, the prior year millage rate shall be applied. If the current year taxable value is not
348 fixed, the taxes shall be estimated for proration by applying the most current fixed millage rate to a sum equivalent to 80% of the purchase price.
349 A tax proration based upon an estimated tax shall, at the request of either party, be re-prorated based on the actual tax bill amount with
350 maximum discount; (2) interest on any assumed indebtedness; (3) rents; (4) Association assessments and CDD/MSTU operating and
351 maintenance assessments; (5) county waste assessments; (6) appliance service contracts assumed by BUYER; and (7) propane gas. BUYER
352 shall receive from SELLER at closing a credit equivalent to the amount of any security deposit and prepaid rents held by SELLER, and any
353 accrued interest thereon, or alternatively, ownership or an assignment of the account in which the deposits and prepaid rents, and any accrued
354 interest thereon, are held.

355 **STANDARD H—HOMEOWNERS' ASSOCIATION DISCLOSURE.** If the Property is located within and governed by any mandatory
356 homeowners' association, the following provisions are incorporated into this Contract:

357 **IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE**
358 **PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY**
359 **DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL**
360 **WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY**
361 **PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE**
362 **AT CLOSING.**

363 **BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE "HOMEOWNERS' ASSOCIATION**
364 **DISCLOSURE SUMMARY," WHICH IS ATTACHED TO AND MADE A PART OF THIS CONTRACT.**

365 **STANDARD I—CONDOMINIUM RESALE DISCLOSURE; VOIDABILITY RIGHTS.** See attached Addendum to Contract Condominium, if
366 applicable. **BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE "ADDENDUM TO**
367 **CONTRACT CONDOMINIUM".**

368 **STANDARD J—ASSOCIATION PROVISIONS; MEMBERSHIP APPROVAL.** Any Association reserve account(s) is included in the purchase
369 price. If Association membership approval is required, BUYER shall, not later than 10 days after receipt of the applicable Association application
370 forms from SELLER, make application for same in the name(s) in which title will be taken, and shall comply with all governing requirements of
371 the Association and be responsible for securing membership approval. If no written approval has been obtained from the applicable Association
372 by the Closing Date, either BUYER or SELLER may terminate this Contract by giving the other party notice of said termination prior to receipt of
373 the approval. BUYER's right to terminate under this Standard J is conditioned upon BUYER timely submitting the application to the Association.
374 SELLER's right to terminate under this Standard J is conditioned upon there not being any violations of the applicable Association's governing
375 documents or any past due balances due to the Association(s). SELLER shall obtain a letter(s) from the Association(s) which sets forth the
376 amounts, periods and payment status of assessments and transfer fees, any open violations, and resale capital assessments and deliver same
377 to the BUYER not later than 5 days prior to the Closing Date. Some condominiums exist upon a leasehold estate or have associated recreational

**SALES CONTRACT-AS IS (RESIDENTIAL IMPROVED PROPERTY) (NABOR 01/01/2025) Page 7 of 11**

Serial#: 072396-100174-2596997
Prepared by: Robert Mackett  |  Blue Heron Realty of Naples  |  rmackett@comcast.net  |  2396436644

f o r m
Simplicity

378 leases which may require the payment of rents, taxes, maintenance, replacement and repair. BUYER takes title subject to any such lease. **IF**
379 **THE CONDOMINIUM UNIT EXISTS UPON A LEASEHOLD ESTATE AND THE REMAINING TERM ON ANY GROUND LEASE IS FEWER**
380 **THAN 40 YEARS AS OF THE EFFECTIVE DATE, BUYER MAY TERMINATE THIS SALES CONTRACT BY GIVING SELLER WRITTEN**
381 **NOTICE OF SAID TERMINATION WITHIN THE EXAMINATION PERIOD DEFINED IN STANDARD B.** SELLER will assign its sublease to
382 BUYER at closing.

383 **STANDARD K—MORTGAGE CREDITOR/LENDER POLICIES.** If BUYER elected to obtain mortgage financing under Paragraph 4.B., the
384 policies of the creditor/lender shall prevail as to the procedures for closing and disbursement of mortgage loan proceeds.

385 **STANDARD L—ESCROW; ESCROW AGENT(S).** The escrow agent who accepts in escrow the deposit(s) paid under this Contract (the "Escrow
386 Agent") shall hold the deposit(s) within the State of Florida in escrow until the earlier of: (1) delivery to another Escrow Agent for closing, who by
387 acceptance agrees to these terms and becomes the Escrow Agent (the Escrow Agent holding the deposit(s) is authorized to so transfer the
388 funds and is relieved of all liability for the funds delivered); (2) delivery of the deed, with payment of the deposit(s) as part of the purchase price
389 of the Property; (3) such time as BUYER may be entitled to return of the deposit(s); or (4) delivery pursuant to written direction of the parties, at
390 which time the Escrow Agent shall pay all of the deposit(s) to the party(ies) entitled thereto. The Escrow Agent shall not be liable for the payment
391 of any interest, damages, attorney fees or court costs in any action brought to recover the deposit(s) held in escrow, or any part thereof, unless
392 the Escrow Agent shall fail or refuse to pay over any such deposit(s) pursuant to a judgment, order or decree that shall be final beyond possibility
393 of appeal. In any proceeding which litigates the disposition of the deposit(s), the Escrow Agent shall be entitled to be paid reasonable attorney
394 fees and court costs, which shall be paid by the non-prevailing party. The Escrow Agent has no duty to collect or attempt to collect any deposit
395 or check given as a deposit, but shall give the parties written notice of: (a) any deposit that is not received not later than 5 days after its due date,
396 and (b) any deposit check that is not paid on presentation, not later than 5 days of learning of its dishonor. If the Escrow Agent is a licensed real
397 estate broker, the Escrow Agent shall comply with the requirements of Chapter 475, Florida Statutes.

398 **STANDARD M—FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA) WITHHOLDING.** A SELLER who is a U.S. citizen or
399 resident alien and who furnishes BUYER with an affidavit attesting to same, is exempt from FIRPTA withholding. If SELLER is a foreign person
400 or entity, BUYER shall deduct and withhold from the purchase price, or collect from SELLER if the net proceeds are insufficient, 15% of the
401 purchase price (the "Withholding Amount") and remit same to the Internal Revenue Service (the "IRS") within 10 days after the Closing Date,
402 unless: (1) the purchase price is not more than $300,000.00 and BUYER executes a sworn certification at closing attesting that BUYER is
403 acquiring the Property for use as a residence; i.e. that BUYER or a member of BUYER's family has definite plans to reside at the Property at
404 least 50% of the number of days the Property is used by any person in each of the first two 12-month periods immediately following the closing,
405 in accordance with the Internal Revenue Code and all applicable regulations (the "BUYER's Residential Use Certification"), in which event the
406 Withholding Amount is $0; or (2) the purchase price is greater than $300,000.00 but not more than $1,000,000.00 and BUYER executes a
407 BUYER's Residential Use Certification, in which event the Withholding Amount is reduced to 10% of the purchase price. If SELLER furnishes to
408 BUYER, not later than the Closing Date, proof of submittal to the IRS of an application for withholding certificate, the closing agent (or other third
409 party mutually designated by SELLER and BUYER) shall hold the applicable Withholding Amount in escrow pending receipt of the withholding
410 certificate, shall remit the sum reflected in the withholding certificate to the IRS within 10 days of receipt of the withholding certificate, and shall
411 promptly refund any remaining balance to SELLER. SELLER shall hold BUYER harmless and indemnify BUYER for not withholding or collecting
412 the applicable Withholding Amount or for withholding and remitting the reduced amount reflected in the withholding certificate. BUYER shall
413 provide to SELLER evidence of remittance of all or any portion of the applicable Withholding Amount to the IRS. The failure of either party to
414 comply or to allow compliance with the requirements of FIRPTA and related regulations shall constitute a breach of this Contract.

415 **STANDARD N—QUICK CLOSING.** Except with respect to the Clearance Period in Standard B or as otherwise set forth in Standard J, if the
416 Closing Date does not allow sufficient time for performances by SELLER and BUYER within the time frames and by the deadlines set forth in
417 this Contract, the parties agree to undertake and complete all performances, inspections, surveys, examinations, delivery of documents, notices,
418 satisfaction of contingencies and all other actions required of or allowed to either party prior to the Closing Date, except that the statutory time
419 period set forth in Standards H and I shall not be affected by this provision.

420 **STANDARD O—DEFAULT AND REMEDIES.** If BUYER does not perform BUYER's obligations hereunder (except as excused by SELLER's
421 default) SELLER may terminate this Contract and all deposits made shall be paid to SELLER as liquidated damages, which shall be SELLER's
422 exclusive remedy. If SELLER does not perform SELLER's obligations hereunder (except as excused by BUYER's default), BUYER may enforce
423 this Contract by a suit for specific performance, damages, or may terminate this Contract.

424 **STANDARD P—LITIGATION; ATTORNEY FEES AND COSTS.** In connection with any litigation concerning this Contract, venue shall be in the
425 county where the Property is located, and the prevailing party shall be entitled to recover reasonable attorney fees and court costs, including on
426 any appeals, from the non-prevailing party. The term "prevailing party" shall include SELLER, BUYER, and any broker acting in an agency or
427 non-agency relationship recognized under Chapter 475, Florida Statutes. For purposes of this Standard, any such broker shall be an intended
428 third party beneficiary.

429 **STANDARD Q—NOTICES, DISCLOSURES, ACKNOWLEDGMENTS AND DOCUMENTS.** All notices, disclosures, and acknowledgments
430 **must be in writing and delivered by U.S. Mail, personal delivery, electronic mail, or facsimile transmission.** SMS (TEXT MESSAGE)
431 **COMMUNICATIONS SHALL NOT CONSTITUTE PROPER NOTICE.** Unless a party is required by law to deliver notices, disclosures,
432 acknowledgments or documents directly to the other party, all notices, disclosures, acknowledgments and documents required or permitted
433 under this Contract shall be effective when given by a party or that party's broker or attorney to the other party or said other party's broker or

**SALES CONTRACT-AS IS (RESIDENTIAL IMPROVED PROPERTY) (NABOR 01/01/2025) Page 8 of 11**

Serial#: 072396-100174-2586907
Prepared by: Robert Mackett | Blue Heron Realty of Naples | rmackett@comcast.net | 2396436664

Form
Simplicity

434  attorney. Delivery of homeowners' association disclosure or condominium documents required under Standards H and I respectively to BUYER's
435  broker or attorney shall not constitute delivery to the BUYER.

436  **STANDARD R—MISCELLANEOUS. (1) The parties have agreed to deal in good faith with respect to all provisions of this Contract.**
437  (2) The singular case or tense shall include the plural case or tense. (3) This Contract may only be modified in writing signed by the parties. (4)
438  (4) Except as otherwise specifically provided, all references to days shall mean calendar days. (5) Except as otherwise specifically provided, all
439  deadlines shall expire at 11:59 PM Eastern Time. Except as otherwise expressly provided by law, if the Closing Date, any deadline or the last
440  day of any time period falls on a Saturday, Sunday, or federal legal holiday, said deadline shall be extended to the following business day. (6)
441  As used herein, the terms "real estate broker" or "broker" shall include all real estate brokers, brokerage corporations or business entities, and
442  their respective licensees involved in this transaction. (7) All title evidence, Association documents and other documents provided to BUYER by
443  or on behalf of SELLER are the property of SELLER until closing and shall be immediately returned to SELLER if this Contract is terminated. (8)
444  Except in the event of BUYER's default and SELLER's termination pursuant to Standard O, if either SELLER or BUYER is permitted to terminate
445  this Contract, said party shall do so by giving notice of said termination to the other party, whereupon all deposits made by BUYER shall be
446  promptly returned to BUYER, this Contract shall be of no further force and effect, and the parties shall have no further liability to one another
447  hereunder except as set forth herein. (9) The headings used in this Contract are for convenience of reference only and shall not be used for
448  interpreting the meaning of any provisions of this Contract. (10) All provisions of this Contract which by their nature or context require
449  performance or provide rights after the Closing Date, including without limitation the provisions of Standard P, shall survive closing.
450  (11) Signatures and initials communicated by electronic or facsimile transmission shall be binding. (12) A facsimile or electronic (including "pdf")
451  copy of this Contract and all related sale documents, and any signatures thereon, shall be considered for all purposes as an original. This
452  Contract and all related sale documents may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act
453  and other applicable laws. (13) This Contract and all related sale documents may be signed in counterparts, and said counterparts shall
454  collectively constitute the entire agreement of the parties. (14) Upon reasonable notice, SELLER shall provide access to the Property to
455  appraiser(s) and surveyor(s) retained by BUYER. (15) SELLER and BUYER authorize the closing agent to provide copies of the American Land
456  Title Association (ALTA) and other settlement statements to all parties, brokers and attorneys associated with this transaction. (16) "Association"
457  shall mean all homeowners associations under Chapter 720, F.S., condominium associations under Chapter 718, F.S. or cooperatives under
458  Chapter 719, F.S. which may have authority over the Property. (17) The timing of SELLER's receipt of SELLER's proceeds is not a prerequisite
459  to SELLER's obligation to vacate the Property and give access and possession to BUYER once the closing agent has confirmed in writing that
460  the closing agent has initiated the disbursement of SELLER's proceeds and officially declared the transaction closed.

461  **STANDARD S—FinCEN GTO REPORTING OBLIGATION.** If the closing agent is required to comply with a U.S. Treasury Department's
462  Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then BUYER shall provide the closing agent with such
463  information and documentation related to BUYER and its Beneficial Owners, including photo identification, which are requested by the closing
464  agent to prepare and submit the FinCEN Currency Transaction Report. BUYER consents to the closing agent's collection and reporting of said
465  information to the IRS.

466  **STANDARD T—NEGOTIATED TERMS; REPRESENTATIONS.** Any and all terms negotiated between the parties must be written into this
467  Contract. BUYER's decision to buy was based upon BUYER's own investigations of the Property. BUYER holds the broker(s) harmless from all
468  liability or loss caused by SELLER's failure to disclose material facts in accordance with this Contract, or SELLER's representations regarding
469  the Property's condition, or from broker's referral, recommendation, or retention of any vendor. The parties agree that assistance to a party by a
470  broker does not, and will not, make the broker responsible for performance.

471  **STANDARD U—BINDING CONTRACT; LEGAL COUNSEL.** THE PARTIES ARE NOT REQUIRED TO USE ANY PARTICULAR FORM OF
472  CONTRACT. TERMS AND CONDITIONS SHOULD BE NEGOTIATED BASED UPON THE RESPECTIVE INTERESTS, OBJECTIVES AND
473  BARGAINING POSITIONS OF THE PARTIES. APPROVAL OF THIS FORM BY THE COLLIER COUNTY BAR ASSOCIATION AND
474  ASSOCIATIONS OF REALTORS DOES NOT CONSTITUTE AN OPINION THAT ANY OF THE TERMS AND CONDITIONS IN THIS
475  CONTRACT SHOULD BE ACCEPTED BY A PARTY IN A PARTICULAR TRANSACTION. THIS IS A LEGALLY BINDING CONTRACT
476  FORM. EACH PARTY ACKNOWLEDGES THAT PRIOR TO SIGNING THE CONTRACT, THE CLOSING EXPENSES HAVE BEEN
477  EXPLAINED, REAL ESTATE TRANSACTION STANDARDS A THROUGH T HAVE BEEN RECEIVED AND REVIEWED, AND THAT PARTY
478  HAS BEEN ADVISED BY THE REAL ESTATE BROKER TO SEEK LEGAL COUNSEL AND TITLE INSURANCE TO PROTECT THAT
479  PARTY'S INTEREST IN CONNECTION WITH THE TITLE STATUS AND CLOSING OF THIS TRANSACTION. BUYER AND SELLER ARE
480  ADVISED TO CONSULT AN APPROPRIATE PROFESSIONAL FOR LEGAL, TAX, PROPERTY CONDITION, ENVIRONMENTAL, AND
481  OTHER SPECIALIZED ADVICE. THIS CONTRACT SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF THE PARTIES HERETO,
482  THEIR HEIRS, ADMINISTRATORS, PERSONAL REPRESENTATIVES, AND SUCCESSORS IN INTEREST.
483

484  **OTHER TERMS AND CONDITIONS:**
485  _____

486  _____

487  _____

488  _____

Serial: 072396-100174-2586997
Prepared by: Robert Mackett | Blue Heron Realty of Naples | rmackett@comcast.net | 2396436644

Form
Simplicity

489 **ADDENDUM:** The following Addendum/Addenda, IF FULLY EXECUTED AND ATTACHED HERETO, and incorporated into this Contract:

490 ☐ Appraisal Contingency
491 ☐ Back-Up Contract
492 ☐ Compensation
493 ☐ Concession
494 ☐ Condominium
495 ☐ Cooperative
496 ☐ FIRPTA Buyer Residential Use Certificate
497 ☐ Homeowner Documents Review
498 ☐ Housing for Older Persons/55 Plus Occupancy
499 ☐ Lead-Based Paint and/or Lead Based Paint Hazards
500 ☐ Lease Back by Seller
501 ☐ Personal Property Inventory
502 ☐ Post-Closing Occupancy

503 ☐ Purchase Price Escalation
504 ☐ Review by Advisor (Buyer)
505 ☐ Review by Advisor (Seller)
506 ☐ Sale of Buyer's Existing Property
507 ☐ Seller Financing
508 ☐ Seller's Right to Make Back-Up Contract Primary Contract
509 ☐ Short Sale
510 ☐ Simultaneous Closing (Developer)
511 ☐ Survey Inspection Right to Inspect and Right to Terminate
512 ☐ VA/FHA Financing
513 ☐ Visual Inspection of Property by Buyer
514 ☐ Other: _____

515 To the extent such Addendum/Addenda terms conflict with the terms of this Contract, the Addendum/Addenda terms shall control.

516 **THE REAL ESTATE TRANSACTION STANDARDS SHOULD NOT BE REVISED OR MODIFIED EXCEPT IN OTHER TERMS AND**
517 **CONDITIONS AND/OR BY ADDENDUM/ADDENDA.**

518 **WIRE FRAUD ADVISORY. CYBER CRIMINALS ATTEMPTING TO STEAL LARGE SUMS OF MONEY ARE TARGETING REAL ESTATE**
519 **TRANSACTIONS BY INTERCEPTING ELECTRONIC COMMUNICATIONS AND SENDING EMAILS THAT APPEAR TO BE FROM REAL**
520 **ESTATE AGENTS, BROKERS, ATTORNEYS, TITLE COMPANIES, LENDERS AND OTHERS INVOLVED IN REAL ESTATE**
521 **TRANSACTIONS. THESE CRIMINALS HAVE INTERCEPTED WIRE TRANSFER INSTRUCTIONS, OBTAINED ACCOUNT INFORMATION,**
522 **AND, BY ALTERING SOME OF THE DATA, USED EMAILS TO CONVINCE BUYERS, SELLERS AND OTHERS TO REDIRECT THE MONEY**
523 **TO A FRAUDULENT ACCOUNT. THESE EMAILS ARE SOPHISTICATED AND MAY LOOK LIKE LEGITIMATE EMAILS FROM PARTIES**
524 **INVOLVED IN THE TRANSACTION. BUYER AND SELLER ARE STRONGLY ENCOURAGED NOT TO SEND PERSONAL INFORMATION,**
525 **SUCH AS BANK ACCOUNT NUMBERS OR OTHER NON-PUBLIC INFORMATION, VIA UNSECURED EMAIL OR OTHER ELECTRONIC**
526 **COMMUNICATION, AND TO NEVER WIRE TRANSFER MONEY WITHOUT PERSONALLY SPEAKING WITH THE INTENDED RECIPIENT**
527 **OF THE WIRE TRANSFER TO VERIFY THE ROUTING AND ACCOUNT NUMBERS. BUYER AND SELLER HEREBY AGREE TO**
528 **INDEMNIFY AND HOLD HARMLESS ESCROW AGENT, ANY CLOSING AGENT AND ANY BROKER ACTING IN AN AGENCY OR NON-**
529 **AGENCY RELATIONSHIP RECOGNIZED UNDER CHAPTER 475, FLORIDA STATUTES, FROM ALL LOSSES, LIABILITIES, CHARGES**
530 **AND COSTS INCURRED DUE TO ANY WIRE TRANSFERS OR WIRE INSTRUCTIONS WHICH RELATE TO THE TRANSFER OR**
531 **ISSUANCE OF FUNDS. FOR PURPOSES OF THIS PARAGRAPH, ESCROW AGENT, ANY CLOSING AGENT AND ANY BROKER SHALL**
532 **BE INTENDED THIRD-PARTY BENEFICIARIES.**

**SALES CONTRACT-AS IS (RESIDENTIAL IMPROVED PROPERTY)** (NABOR 01/01/2025) Page 10 of 11
Serial#: 072396-100174-2586997
Prepared by: Robert Mackett | Blue Heron Realty of Naples | rmackett@comcast.net | 2396436644

Form
Simplicity

**ATTENTION: SELLER AND BUYER**

CONVEYANCES TO FOREIGN BUYERS: Part III of Chapter 692. Sections 692.201 - 692.205. Florida Statutes, 2023 707 (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by certain buyers who are associated with a "foreign country of concern", namely: the People's Republic of China, the Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. It is a crime to buy or knowingly sell property in violation of the Act.

**At time of purchase, Buyer must provide a signed affidavit which complies with the requirements of the Act. Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under the Act.**

| | |
|---|---|
| _____ | _____ 3/21/25 |
| (Seller's Signature)    (Date) | (Buyer's Signature)    (Date) |
| **BOB RUGGIERO** | **VINCENT QUIGLEY** |
| (Seller's Printed Name) | (Buyer's Printed Name) |
| | _____ 3/21/25 |
| _____ | (Buyer's Signature)    (Date) |
| (Seller's Signature)    (Date) | |
| **JOAN RUGGIERO** | **JEAN QUIGLEY** |
| (Seller's Printed Name) | (Buyer's Printed Name) |

533    **SELLER rejects BUYER'S offer on** _____ **{Insert Date}.**

534    _____    _____
535        (Seller's Signature)            (Seller's Signature)

536                          **IDENTIFICATION OF BROKERS AND LICENSEES**

537    Listing Brokerage: **BLUE HERON REALTY OF NAPLES**    Buyer's Brokerage: **BLUE HERON REALTY OF NAPLES**

538    Listing Licensee: **ROBERT MACKETT**    Buyer's Licensee: **ROBERT MACKETT**

539    IDENTIFICATION OF ESCROW AGENT Escrow Agent's Name: **SHAUN GARRY OF GRAY ROBINSON ATTORNEYS**

540    Escrow Agent Address: **999 VANDERBILT BEACH RD # 612 NAPLES FL 34108**

541    Escrow Agent Telephone: **239 552 4808**    Fax: _____ Email: **SHAUN.GARRY@GRAY-ROBINS**

542    **THIS CONTRACT SHALL NOT MODIFY THE LISTING CONTRACT OR OTHER OFFER OF COMPENSATION MADE BY SELLER OR LISTING**
543    **BROKER TO BUYER'S BROKERS.**

©2025 Naples Area Board of REALTORS® and Association of Real Estate Professionals, Inc. All Rights Reserved. (NABOR 1/1/2025)
Approved by the Marco Island Area Association of REALTORS®. Inc. and the Collier County Bar Association. Page 11 of 11
Serial#: 045108-100174-2587393
Prepared by: Robert Mackett | Blue Heron Realty of Naples | rmackett@comcast.net | 2386438644

Form
Simplicity

EXHIBIT B

| American Land Title Association | ALTA Settlement Statement - Combined |
| | TRID Rates |
| | Adopted 05-01-2015 |

Settlement Agent: GrayRobinson, P.A.

Settlement Location: 999 Vanderbilt Beach Road Suite 612, Naples, Florida 34108

File No./Escrow No.: 26088.1

Print Date & Time: 4/23/25 at 9:35 am

Property Address: 8500 Naples Heritage Drive, #1024, Naples, Florida 34112

Buyer: Vincent P. Quigley and Jean M. Quigley

Seller: Robert Ruggiero and Joan Ruggiero

Lender: Summit Mortgage Corporation- ISAOA

Loan ID # 4600636070

Settlement Date: 4/23/2025

Disbursement Date: 4/23/2025

| Seller | | Description | Borrower / Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Financial** | | |
| | $430,000.00 | Sale Price of Property | $430,000.00 | |
| | | Deposit | | $20,000.00 |
| | | Loan Amount to Summit Mortgage Corporation- ISAOA | | $115,000.00 |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | $110.27 | Naples Heritage CDD 04/23/25 to 09/30/25 | $110.27 | |
| | $1,879.07 | Master Association 04/23/25 to 06/30/25 | $1,879.07 | |
| | $132.33 | Campus Expansion 04/23/25 to 06/30/25 | $132.33 | |
| | $257.43 | Internet 04/23/25 to 12/31/25 | $257.43 | |
| | $978.13 | Veranda II 04/23/25 to 06/30/25 | $978.13 | |
| $985.89 | | County Taxes 01/01/25 to 04/23/25 | | $985.89 |
| | | | | |
| | | **Loan Charges to Summit Mortgage Corporation- ISAOA** | | |
| | | .049% of Loan Amount (Points) to Summit Mortgage Corporation- ISAOA | $56.35 | |
| | | Administrative Fee to Summit Mortgage Corporation- ISAOA | $1,050.00 | |
| | | Processing Fee to Summit Mortgage Corporation- ISAOA | $600.00 | |
| | | Appraisal Fee to Appraisal Source, LLC | $425.00 | |
| | | Credit Report Fee to Factual Data | $120.80 | |
| | | Credit Report Monitoring Fee to Equifax | $15.60 | |
| | | Flood Certification to XACTUS | $6.00 | |
| | | Lien Search Fee to Prop Logix | $145.78 | |
| | | Loan Package Fee to GrayRobinson, P.A. | $250.00 | |
| $125.00 | | Misc./Copy/Couier to GrayRobinson, P.A. | $125.00 | |
| | | Search Fee to Attorneys' Title Fund Services, LLC | $75.00 | |
| $850.00 | | Settlement Fee to GrayRobinson, P.A. | $750.00 | |
| | | Homeowner's Insurance Premium to Edison Insurance Company | $1,089.93 | |
| | | Prepaid Interest (21.66 per day from 04/23/25 to 05/01/25) to Summit Mortgage Corporation- ISAOA | $173.28 | |

Note: POC B: Paid Outside Closing by the Borrower/Buyer. POC S: Paid Outside Closing by the Seller. PBO: Paid by Other.

Copyright 2015 American Land Title Association
All rights reserved

DoubleTime®                                                    File 26088.1

| Seller | | Description | Borrower / Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Title Charges & Escrow / Settlement Charges** | | |
| | | Title - Lender's Title Endrsmnts to Old Republic Nat. Title/GrayRobinson, P.A. | $140.00 | |
| | | Title - Lender's Title Insurance to Old Republic Nat. Title/GrayRobinson, P.A. | $650.00 | |
| | | Title - Owner's Title Insurance (optional) to Old Republic Nat. Title/GrayRobinson, P.A. | $1,760.00 | |
| | | | | |
| | | **Commissions** | | |
| $10,750.00 | | Real Estate Commission Buyers Broker to Blue Heron Realty of Naples | | |
| $10,750.00 | | Real Estate Commission Sellers Broker to Blue Heron Realty of Naples | | |
| | | | | |
| | | **Government Recording and Transfer Charges** | | |
| | | Recording fees to Clerk of Circuit Court | $173.00 | |
| | | Certificate of Approval to Clerk of Circuit Court | $10.00 | |
| $3,010.00 | | Deed - Documentary Stamps to Clerk of Circuit Court | | |
| | | Mortgage - Documentary Stamps to Clerk of Circuit Court | $402.50 | |
| | | Mortgage - Intangible Taxes to Clerk of Circuit Court | $230.00 | |
| | | | | |
| | | **Miscellaneous** | | |
| $200.00 | | Estoppel Fee to Naples Heritage Golf & Country Club | | |
| $386.95 | | Estoppel Reimbursement to GrayRobinson, P.A. | | |
| $850.00 | | Hot Water Replacement Reimbursement to Blue Heron Realty of Naples | $850.00 | |
| | | Resale Capital to Naples Heritage Golf & Country Club | $15,000.00 | |
| $885.00 | | Second Quarter Assessment to Veranda II at Southern Links Condo Assn | | |
| | | Transfer Fee to Ability Management | $50.00 | |
| | | | | |

| Seller | | | Borrower / Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| $28,772.84 | $433,357.23 | Subtotals | $457,485.47 | $135,985.89 |
| | | Due From Borrower | | $321,499.58 |
| $404,584.39 | | Due To Seller | | |
| $433,357.23 | $433,357.23 | Totals | $457,485.47 | $457,485.47 |

Note: POC B: Paid Outside Closing by the Borrower/Buyer, POC S: Paid Outside Closing by the Seller, PBO: Paid by Other.

Copyright 2015 American Land Title Association
All rights reserved

DoubleTime®

File 26088.1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re

ROBERT P RUGGIERO SR                      Chapter 11
                                          Case # 24-70416-las
                        Debtor
-------------------------------------------------------X

       The undersigned attorney, duly admitted to practice before this Court, affirms the
following to be true under the penalties of perjury:

       That he is the attorney for the debtor in the instant case.

       That on the 30th day of April 2025, your affiant served a true copy of the Notice of
Motion and Supporting Documents in this action upon:

Office of the United States Trustee, Attn Christine Black Esq., 560 Federal Plaza, Central Islip
NY 11722
US Attorney - EDNY, 610 Federal Plaza, Central Islip NY 11722
US DOJ - Tax Division, Tax Division 950 Pennsylvania Avenue NW Washington DC 20530
Enid Nagler Stuart, Assistant Attorney General, Special Bankruptcy Counsel ,Office of the New
York State Attorney General, 28 Liberty Street, 17th Floor, New York, NY 10005
Annexed list of creditors and other parties to whom service is required pursuant to BR 2002 and
the Local Rules of this Court

the address(es) designated by said attorney and party for that purpose by depositing a true copy of
same to each attorney and party, enclosed in a post paid properly addressed wrapper, in an
official depository, VIA FIRST CLASS MAIL, under the exclusive care and custody of the
United States Postal Service within the State of New York.

Dated: April 30, 2025
      Carle Place, New York

                        s/Richard S. Feinsilver
                        RICHARD S. FEINSILVER

Label Matrix for local noticing
0207-8
Case 8-25-70416-las
Eastern District of New York
Central Islip
Wed Apr 30 10:16:51 EDT 2025

Plumbers Local Union No. 200 Welfare Fund, P
c/o Archer Byington Glennon & Levine LLP
534 Broadhollow Road
Suite 430
Melville, NY 11747-3600

Trustees of the International Training Fund
c/o Virginia & Ambinder, LLP
40 Broad Street
7th Floor
New York, NY 10004-2776

Trustees of the Plumbers Local Union No. 1 W
c/o Virginia & Ambinder, LLP
40 Broad Street
7th Floor
New York, NY 10004-2776

Trustees of the United Association National
c/o Virginia & Ambinder, LLP
40 Broad Street
7th Floor
New York, NY 10004-2776

Webster Bank, N.A.
c/o Goetz Platzer LLP
1 Penn Plaza, Suite 3100
New York, NY 10119-3100

8
290 Federal Plaza
Central Islip, NY 11722-4437

ACAR Leasing LTD d/b/a GM Financial Leasing
P.O. Box 183853
Arlington, TX 76096-3853

ALLY
BOX 380901
BLOOMINGTON, MN 55438-0901

AMERICAN CONTRACTORS
801 S FIGUEROA STREET
S 700
LA, CA 90017-5504

AMEX
BOX 981540
EL PASO, TX 79998-1540

ARESCO
304 WEST JOHN STREET
HICKSVILLE, NY 11801-1032

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

BARCLAY
PO BOX 13337
PHILADELPHIA, PA 19101-3337

BEACON
BOX 123234
DALLAS, TX 75312-3234

BEST EGG
1523 CONCORD PIKE
WILMINGTON, DE 19803-3653

BEST EGG
BOX 42912
PHIL, PA 19101-2912

BLR 3 INC
3140 VETERANS MEM HWY
BOHEMIA, NY 11716-1039

BLR3 Inc.
3140 Veterans Memorial Highway
Bohemia, NY 11716-1039

Bank of America, N.A.
PO Box 673033
Dallas, TX 75267-3033

CANON
14904 COLL CENTER DRIVE
CHICAGO, IL 60693-0149

CAPITAL ONE
BOX 30285
SALT LAKE CITY, UT 84130-0285

CARE CREDIT
PO BOX 960061
ORLANDO, FL 32896-0061

CASSONE LEASING
1950 LAKELAND AVE
RONKONKOMA, NY 11779-7400

CHASE
BOX 15298
WILMINGTON, DE 19850-5298

CITIBANK BANKRUPTCY
BOX 790040
ST LOUIS, MO 63179-0040

CLINTON WELDING
40 JERICHO TPKE
JERICHO, NY 11753-1037

CREDIT FIRST
BOX 81315
CLEVELAND, OH 44181-0315

CULLEN COMPANY LLC
10 MEMORIAL DRIVE
NEPTUNE, NJ 07753-5052

DISTRIBUTION INTL
BOX 746945
ATLANTA, GA 30374-6945

DUNEGRASS CORP
22 MOSS CREEK LANE
PATCHOGUE, NY 11772-6160

EASTERN INDUSTRIAL
194 ATLANTIC AVENUE
GARDEN CITY S, NY 11040-4797

FERGUSON ENTERPRISES
50 MEADOWLANDS PKY
SECAUCUS, NJ 07094-2945

FIRST CITIZENS
21146 NETWORK PLACE
CHICAGO, IL 60673-1211

(p)FIRST NATIONAL BANK OF OMAHA
1620 DODGE ST
STOP CODE 3113
OMAHA NE 68102-1593

FW WEBB
160 MIDDLESEX TPKE
BEDFORD, MA 01730-1416

Ferguson Enterprises LLC
57-22 49th Street
Maspeth, NY 11378-2099

GRAINGER
DEPT 807242102
PALATINE, IL 60038-0001

GRAMERCY RISK MGT
BOX 67070
NEWARK, NJ 07101-8082

GREEN ART PLUMBING
65 SOUTH COLUMBUS AVENUE
FREEPORT, NY 11520-3940

HILTI INC
BOX 70299
PHILA, PA 19176-0299

HOME DEPOT COMM
BOX 70614
PHILA, PA 19176-0614

INDUSTRIAL THREADED PROD
777 MOUNT AVENUE
WYANDANCH, NY 11798-4452

INTERNAL REVENUE SERVICE
600 ARCH STREET
PHILA, PA 19106-1695

INTERNAL REVENUE SERVICE
BOX 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

James W. Versocki, Esq.
Archer, Byington Glennon & Levine LLP
534 Broadhollow Road, Suite 430
Melville, New York 11747-3600

John H. Byington III, Esq.
Archer, Byington Glennon & Levine LLP
534 Broadhollow Road, Suite 430
Melville, New York 11747-3600

KELLY SYSTEMS
422 N WESTERN AVENUE
CHICAGO, IL 60612-1491

Kelly Systems Inc
422 N Western Ave
Chicago, IL, IL 60612-1491

LOCAL 282
2500 MARCUS AVENUE
NEW HYDE PARK, NY 11042-1091

LOWES BUSINESS
BOX 669824
DALLAS, TX 75266-0781

MULLOLY JEFFREY
6851 JERICHO TURNPIKE
BOX 9036
SYOSSET, NY 11791-4494

NY PLUMBING WHOLESALE
230 DUFFY AVENUE
UNITE A
HICKSVILLE, NY 11801-3641

NY Plumbing Wholesale & Supply Inc
230 Duffy Ave. Unit A
Hicksville, NY 11801-3641

NYS DEPT OF TAXATION
250 VETERANS MEM HWY
HAUPPAUGE, NY 11788-5500

NYS DEPT OF TAXATION
BOX 5300
Albany, NY 12205-0300

New York State Department of Taxation and Fi
250 Veterans Hwy
Hauppauge, NY 11788-5500
Attn: Josh Russell

New York State Department of Taxation and Fi
Bankruptcy Section
P O Box 5300
Albany NY 12205-0300

PAM THERMAL PRODUCTS
136 ABBOTT DRIVE
HUNTINGTON, NY 11743-2127

PLUMBERS LOCAL 1
50-02 5TH STREET
2ND FLOOR
LONG ISLAND CITY, NY 11101-6164

PLUMBERS LOCAL 200
C/O ARCHER BYINGTON
534 BROADHOLLOW ROAD
S 430
MELVILLE, NY 11747-3673

Pam Thermal Products Inc.
136 Abbott Drive
Halesite, NY 11743-2127

Plumbers Local Union No. 200
Additional Security Benefit Fund
c/o Archer Byington Glennon & Levine
534 Broadhollow Rd, Suite 430
Melville, NY 11747-3600

Plumbers Local Union No. 200
Apprenticeship Training Fund
c/o Archer Byington Glennon & Levine
534 Broadhollow Rd, Suite 430
Melville, NY 11747-3600

Plumbers Local Union No. 200 Pension Fund
c/o Archer Byington Glennon & Levine
534 Broadhollow Rd, Suite 430
Melville, NY 11747-3600

Plumbers Local Union No. 200 Welfare Fund
c/o Archer Byington Glennon & Levine
534 Broadhollow Rd, Suite 430
Melville, NY 11747-3600

Quantum LS LLC D/B/A Fundation Group LLC
11600 Sunrise Valley Drive suite 180
Reston, VA 20191-1410

Resurgent Capital Services as servicing agen
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

SEAFORD AVENUE CORP
25 BROOKLYN AVENUE
MASSAPEQUA, NY 11758-4855

SYNCHRONY
BOX 965060
ORLANDO, FL 32896-5060

Trs. of the International Training Fund
c/o Virginia & Ambinder, LLP
40 Broad Street, 7th Floor
New York, NY 10004-2776

Trs. of the Plumbers Local Union No. 1 Welfa
c/o Virginia & Ambinder, LLP
40 Broad St., 7th Floor
New York, NY 10004-2776

Trs. of the Plumbers Local Union No.1 Benefi
c/o VIRGINIA & AMBINDER, LLP
Attn: Adrianna R. Grancio, Esq.
40 Broad Street, 7th Floor
New York, New York 10004-2776

Trs. of the United Association Nat'l Pe
c/o VIRGINIA & AMBINDER, LLP
Attn: Adrianna R. Grancio, Esq.
40 Broad Street, 7th Floor
New York, New York 10004-2776

Trs. of the United Association National Pens
c/o Virginia & Ambinder, LLP
40 Broad St., 7th Floor
New York, NY 10004-2776

U.S. Bank NA dba Elan Financial Services
Bankruptcy Department
PO Box 108
Saint Louis MO 63166-0108

U.S. Specialty Insurance Company
13403 Northwest Freeway
Houston, Texas 77040-6006

UNIVERSAL TOOLS
1175 MONTAUK HWY
MASTIC, NY 11950-2918

US SPECIALTY INSURANCE
13403 NORTHWEST FREEWAY
HOUSTON, TX 77040-6006

UTILITY DETECTION
BOX 223
MILFORD, PA 18337-0223

United States Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4456

WEBSTER BANK
BOX 790408
ST LOUIS, MO 63179-0408

(p)WEX BANK
1 HANCOCK STREET
PORTLAND ME 04101-4217

Webster Bank, N.A.
c/o Goetz Platzer LLP
1 Penn Plaza, Suite 3100
New York, New York 10119-3100
Attn: T. Sadutto-Carley, Esq.

X CELL INSULATION
110 KEYLAND COURT
BOHEMIA, NY 11716-2656

Christine H Black
US Department of Justice
Office of the U.S. Trustee
560 Federal Plaza
Central Islip, NY 11722-4456

Eugene Banta
26 Court St
Suite 304
Brooklyn, NY 11242-1133

Richard S Feinsilver
One Old Country Road
Garle Place, NY 11514-1851

Richard S Feinsilver
Richard S. Feinsilver, Esq.
One Old Country Road
Suite 347
Carle Place, NY 11514-1851

Robert P Ruggiero Sr
11 Linden Street
Selden, NY 11784-2801

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

BANK OF AMERICA
BOX 982235
EL PASO, TX 79998

FIRST NATIONAL - OMAHA
BOX 3128
OMAHA, NE 68103

(d)First National Bank of Omaha
1620 Dodge St Stop Code 3113
Omaha, NE 68197

(d)First National Bank of Omaha
1620 Dodge Street, Stop Code 3113
Omaha, Nebraska 68197

WEX BANK
BOX 6293
CAROL STREAM, IL 60197

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)New York State Department of Taxation and

(u)U.S. Specialty Insurance Company

(u)Plumbers Local Union No. 200 Fringe Benefi

(d)Trustees of the International Training Fun
c/o Virginia & Ambinder, LLP
40 Broad St., 7th Floor
New York, NY 10004-2776

(d)U.S. Specialty Insurance Company
13403 Northwest Freeway
Houston, Texas 77040-6006

End of Label Matrix
Mailable recipients    91
Bypassed recipients     5
Total                  96