UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
In re:                            Chapter 11

ROBERT P. RUGGIERO, SR           Case No. 25-70416-las


                        Debtor.   Hon Louis A. Scarcella
--------------------------------X

## DISCLOSURE STATEMENT

### I.    INTRODUCTION


ROBERT P. RUGGIERO SR (the "Debtor"), makes this Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code to enable its creditors and shareholders to make an informed judgment concerning the Debtor's Plan of Reorganization ("Plan"), prior to exercising their rights to vote to accept or reject the Plan.


Accompanying this Disclosure Statement are copies of the following documents:

(a)   The Chapter 11 Plan annexed as Exhibit "A".

(b)   Financial Exhibits as follows:

    1.   Summary of DIP Income/Expenses
         annexed as Exhibit "B"

    2.   Pro-Forma Forecast annexed as Exhibit "C";

    3.   Liquidation Distribution Analysis
         annexed as Exhibit "D";

The only authorized representations concerning the Debtor are those made in this Disclosure Statement. Any other representations or inducements made to secure acceptance or rejection of the Plan, which are other than as contained in this Disclosure Statement, should not be relied upon in voting on the Plan.

## II. REPRESENTATIONS AND SCOPE OF STATEMENT

The information contained herein has not been subject to a certified audit. Accordingly, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies. The Debtor believes that the information contained herein is accurate, and has verified its accuracy to the extent possible.

No information or representations concerning the Debtor other than as set forth in the Disclosure Statement have been authorized by the Debtor, and should not be relied upon by a Creditor in reaching its decision as to whether to accept or reject the Plan.

This Disclosure Statement does not purport to be a complete description of the Debtor' Plan, its financial operations, the applicable provisions of the Bankruptcy Code, or

of other matters that may be deemed significant by certain Creditors. This Disclosure Statement is merely an attempt to set forth, in reasonable detail, information that will enable a Creditor to make an informed judgment about the Plan.

This Disclosure Statement shall also discuss: (a) The history of the Debtor and significant events during the bankruptcy case; (b) How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed); [c] What factors the Bankruptcy Court will consider when deciding whether to confirm the Plan; (d) Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and (e) The effect of confirmation of the Plan.

III. EFFECT OF PLAN, CREDITOR'S VOTE AND COURT HEARING.

Creditors are urged to read the Plan in full. The Plan represents a proposed legally binding agreement between the Debtor and its Creditors and should be read together with this Disclosure Statement in order that an informed judgment concerning the Plan can be made.

As a Creditor, <u>your vote on the Plan is most important.</u>
In order for the Plan to be deemed accepted and thereafter
confirmed, at least two-thirds (2/3) in dollar amount and more
than one-half (½) in number of the allowed Claims of each class
of Creditors who vote and who are <u>impaired</u> under the Plan must
cast their vote for acceptance of the Plan. The Debtor
recommends that each Creditor who votes, accepts the Plan. A
Creditor who does not vote for the acceptance or rejection of the
Plan will not count in the outcome of the Plan's acceptance.

The proposed distributions under the Plan are discussed
at pages 9-14 of this Disclosure Statement. **SPECIAL NOTE TO CLASS
2 CREDITORS:** Unless the holder of an Allowed Class 2 Unsecured
Claim agrees to less favorable treatment, the Debtor shall pay
holders of Allowed Class 2 Unsecured Claims 1% of the amount of
the Allowed Class 2 Claims in cash, on the Effective Date. The
Allowed Class 2 Unsecured Claims are impaired under the Plan, and
as such, shall vote on the Plan.

IV.   <u>HISTORY OF THE CHAPTER 11 CASE</u>

The case began January 31, 2025 ("Petition Date") when
the Debtor filed a voluntary Chapter 11 Petition in the United
States Bankruptcy Court for the Eastern District of New York (the
"Bankruptcy Court") and an Order for Relief was simultaneously

entered in the case. The case bears Case No. 825-70416-las is now pending before the Honorable Louis A. Scarcella, United States Bankruptcy Judge.

V.  HISTORY OF THE DEBTOR

The Debtor is an individual residing in Selden, New York. From on or about 2005 to November, 2024, the Debtor was President and CEO of ARA Plumbing Inc. ("ARA"), a commercial plumbing contractor based in Seaford, New York.

In late 2023, ARA began to have difficulties collecting certain receivables necessary to maintain its cash flow to meet its then current financial needs, in particular, the remittance of payroll taxes and various union benefit payments on a regular basis.

Throughout 2024, ARA's cash flow shortfalls accelerated resulting in a collection action being commenced against ARA and the Debtor, as the designated responsible party, by Plumbers Local No. 200 ("Local 200").

In October, 2024, Local 200 obtained a judgment against ARA and the Debtor in the amount of approximately $1,200,000.00.

Upon entry of the judgment, Local 200 commenced enforcement proceedings against ARA, restraining their bank accounts.

As a consequence of the foregoing, ARA was forced to cease operations in November, 2024. Upon the cessation of operations, the Debtor, as the responsible party for the remittance of payroll tax and union benefit deposits, was assessed responsibility for total liabilities of well in excess of $2,000,000.00. In order to deal with theses liabilities in an orderly fashion, the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code so as to afford to it the opportunity to restructure his existing debt.

## POST-PETITION OPERATION

On March 4, 2025, the Bankruptcy Court entered an Order authorizing the Debtor to retain Richard S. Feinsilver, Esq. as its counsel for the purposes of the Chapter 11 case. In order to minimize Chapter 11 professional and administrative expenses, the Debtor has elected to retain its bookkeeping and accounting in house and not retain an accountant.

On February 4, 2025, the Bankruptcy Court entered an Order setting March 20, 2025 as the last date for non-

governmental creditors to file a proof of claim in this Chapter
11 case.

During the first five months in Chapter 11, the Debtor
has also undertaken the following efforts to create liquidity in
its non-exempt assets which will be used to fund its proposed
Chapter 11 Plan: (a) in April, 2025, the Debtor successfully
closed on the sale of two of its parcels of non-exempt real
property (a commercial building located in Seaford, New York held
by ARA, and a condominium in Florida in which the Debtor held a
50% interest as a tenant by the entirety with his spouse),
yielding in excess of $835,000.00 in non-exempt proceeds for its
bankruptcy estate; (b) the Debtor has identified an additional
$97,759.00 in pre-petition funds held by the Debtor's spouse.
These funds shall be turned over to the Debtor's estate from the
spouse's share of the proceeds from the sale of the Florida
condominium; [c] the Debtor has also identified an additional
$200,000.00 in accounts receivable owed to ARA which have a high
degree of probability of recovery which shall be pursued under 11
U.S.C. Section 542 as well as an additional $1,000,000.00 from a
job completed at the recently opened Nassau County Family Court
Complex (subject to possible setoffs and hold backs - an exact
amount of possible recovery cannot be determined as of this
date); (d) the Debtor has also undertaken an investigation of the
accounting of $370,000.00 in proceeds from a performance bond

paid to various Plumbers Local 200 entities ("Local 200") post petition, in the form of an objection to claims, to determine if the Debtor is entitled to a setoff against the various amounts claimed to be owed by Local 200 - a hearing on this application is scheduled for July 10, 2025; and (e) an investigation of a possible preference in the amount of $62,000.00 that was paid to Local 200 in November 2024.

The Debtor's Operating Reports, reflecting the deposits discussed above, for the periods from January 31, 2025 to May 31, 2025 are on file with the Bankruptcy Court.

<h3 style="text-align:center">VI.   <u>SUMMARY OF THE PLAN</u></h3>

**THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. CREDITORS ARE URGED TO READ THE PLAN IN FULL. CREDITORS ARE FURTHER URGED TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO FULLY UNDERSTAND THE PLAN. THE PLAN IS COMPLEX INASMUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT WITH THE DEBTOR AND AN INTELLIGENT JUDGMENT CONCERNING THE PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.**

This summary of the Plan contains terms which are defined in Article I of the Plan. Article I of the Plan should be referred to while reviewing this Summary. A copy of the Plan is annexed hereto as Exhibit "A".

The Debtor believes that the Plan affords payment to its creditors in excess of amounts that would be available other than pursuant to the Plan, including by the conversion of the Debtor's Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

A.   <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>:  As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.   <u>UNCLASSIFIED CLAIMS</u>: Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

1.   <u>Administrative  Expenses</u>: Administrative expenses are costs or expenses of administering the Debtors chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold

to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following outlines the Debtor's estimated administrative expenses, and their proposed treatment under the Plan: The Debtor's administrative expenses consists of (a) professional fees due and owing to Debtor's counsel and the Subchapter V Trustee, (b) any outstanding United States Trustee Fees and [c] any possible post petition fiduciary taxes which may become payable prior to the Effective Date. It is estimated that the professional fees due to Richard S. Feinsilver, Esq., Debtor's counsel will be in the approximate sum of $40,000.00, of which $15,000.00 has been paid as a retainer, subject to the approval of the Court. Last, the Debtor estimates that as of July 1, 2025, its post petition administrative liabilities shall total approximately less than $2,500.00, including a provision for possible fees to the Office of the United States Trustee and any taxing authorities. Thus, Administrative Expenses of $27,500.00, shall be paid, in cash, on the Effective Date.

2. <u>Priority Tax Claims:</u> Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a § 507(a)(8)

priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief. The following outlines the Debtor's estimated priority claims, and their proposed treatment under the Plan:

INTERNAL REVENUE SERVICE - The Internal Revenue Service has filed an amended Priority Claim in the amount of $682,198.68. The Debtor shall pay the IRS the amount of its allowed claim pursuant to 11 U.S.C. Section 1129(a)(9)[c], employing the statutory rate of interest of six (6%) percent per annum. Thus, in order to repay this priority claim over a period not to exceed five years from the petition date, of a value as of the effective date of the plan equal to the allowed amount of such claim, the Debtor will timely pay the full amount of the pre-petition Priority claim of the IRS as follows: (a) a lump sum payment of a minimum of $640,000.00 on the Effective Date, plus (b) the balance of $42,198.68 in 48 monthly installments commencing January 2026, each in the amount of $991.04 per month. The aggregate sum to be paid to the Internal Revenue Service, inclusive of statutory interest, shall be $687,569.92.

NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE - The Priority Claim of the New York State Department of Taxation and Finance is $57,640.90. The Debtor shall pay the New York State

Department of Taxation and Finance the amount of its allowed claim pursuant to 11 U.S.C. Section 1129(a)(9)[c], employing the statutory rate of interest of six (6%) percent per annum. Thus, in order to repay this priority claim over a period not to exceed five years from the petition date, of a value as of the effective date of the plan equal to the allowed amount of such claim, the Debtor will timely pay the full amount of the pre-petition Priority claim of the NYSDTF as follows: (a) a lump sum payment of a minimum of $40,000.00 on the Effective Date, plus (b) the balance of $17,640.90 in 48 monthly installments commencing January 2026, each in the amount of $414.30 per month. The aggregate sum to be paid to the New York State Department of Taxation and Finance, inclusive of statutory interest, shall be $59,886.40.

PLUMBERS LOCAL UNION NO. 200 AND ITS AFFILIATES – Plumbers Local Union 200 ("Local 200") has filed four claims priority Claims on behalf of its various affiliates in the aggregate amount of $241,953.16. The Debtor shall pay Local 200 the amount of their allowed claims pursuant to 11 U.S.C. Section 1129(a)(9)[c], employing the statutory rate of interest of six (6%) percent per annum. Thus, in order to repay this priority claim over a period not to exceed five years from the petition date, of a value as of the effective date of the plan equal to the allowed amount of such claim, the Debtor will timely pay the

full amount of the pre-petition Priority claim of the NYSDTF as follows: (a) a lump sum payment of a minimum of $200,000.00 on the Effective Date, plus (b) the balance of $41,953.16 in 48 monthly installments commencing January 2026, each in the amount of $985.27 per month. The aggregate sum to be paid to Local 200, inclusive of statutory interest, shall be $247,292.96.

PLUMBERS LOCAL 1 AND ITS AFFILIATES - Plumbers Local Union 1 ("Local 1") has filed two claims priority Claims on behalf of its various affiliates in the aggregate amount of $117,686.00. The Debtor shall pay Local 1 the amount of their allowed claims pursuant to 11 U.S.C. Section 1129(a)(9)[c], employing the statutory rate of interest of six (6%) percent per annum. Thus, in order to repay this priority claim over a period not to exceed five years from the petition date, of a value as of the effective date of the plan equal to the allowed amount of such claim, the Debtor will timely pay the full amount of the pre-petition Priority claim of the NYSDTF as follows: (a) a lump sum payment of a minimum of $22,826.00 on the Effective Date, plus (b) the balance of $41,953.16 in 48 monthly installments commencing January 2026, each in the amount of $532.78 per month. The aggregate sum to be paid to Local 1, inclusive of statutory interest, shall be $120,573.44.

**SPECIAL NOTE REGARDING PRIORITY CLAIMS:** The lump sum payments proposed to be paid to allowed Priority Claimants on the Effective Date is based upon a pro-rate share of monies recovered by the Debtor and on hand as of the date of this Disclosure Statement. It is anticipated that the lump sump pro-rata dividends to be paid to these creditors shall increase proportionally as additional funds are recovered by the Debtor from the collection of receivables owed to ARA Plumbing Inc., reducing the Debtor's monthly obligations to these creditors subsequent to the Effective Date of the Plan.

In addition, the Priority Claims of Local 200 and its affiliates are subject to a possible downward adjustment. On May 13, 2025, the Debtor filed a motion objecting to various Priority Claims filed by Local 200 seeking an accounting of $370,000.00 that was paid post petition to Local 200 by U.S. Specialty Insurance Company under a performance bond issued to ARA. This motion shall be heard before the Bankruptcy Court on July 10, 2025. A second motion has been prepared and shall be filed seeking an accounting of the $62,000.00 paid by the Debtor to Local 200 in November 2024, which shall be heard by the Court sometime in late August/early September 2025.

C. <u>CLASSES OF CLAIMS AND EQUITY INTERESTS</u> The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

CLASS 1: <u>Secured Claim of Plumbers Local Union No. 200</u> ("Local 200"): Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency shall be classified as a general unsecured claim.

Local 200 - On February 26, 2025, Local 200 filed a proof of claim alleging a secured claim encumbering the Debtor's homestead in the amount of $650,000.00. On May 1, 2025, the Debtor filed an application with this Court to reduce the amount of this creditor's secured claim pursuant to 11 U.S.C. Section 522(f). Subsequent to the hearing on the application, the Debtor have agreed to enter into an Agreed Order setting the amount of the Secured claim at $456,875.00. It is anticipated that an Order setting the claim shall be entered by the Bankruptcy Court in the next 14-21 days.

Local 200 shall retain its lien against the Debtor's property in this amount. The Debtor shall pay Local 200 the amount of its allowed claim pursuant to 11 U.S.C. Section 1129(a)(9)( c), employing the rate of interest of nine (9%) percent per annum. The Debtor shall timely pay the full amount of the pre-petition Secured claim, as reduced, from the proceeds of sale of the Debtor's homestead located at 11 Linden Street, Selden, New York. The secured claim of Local 200 is impaired under the Plan and, as such, shall vote on the Plan.

CLASS 2: <u>General Unsecured Claims</u> General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

Class 2 claimants, whose claims total $1,854,098.00, will be paid one (1%) percent of their allowed claim, pursuant to 11 U.S.C. Section 1129(a)(9)[c], in cash on the Effective Date The aggregate sum to be paid to the unsecured creditors shall be $18,540.98. General unsecured creditors are impaired under the Plan and, as such, shall have the right to vote to accept or reject the Plan.

**SPECIAL NOTE REGARDING ALL UNSECURED CLAIMS:** The lump sum payments proposed to be paid to allowed Priority Claimants on the Effective Date is based upon a pro-rate share of monies recovered by the Debtor and on hand as of the date of this

Disclosure Statement. It is anticipated that the lump sump pro-rata dividends to be paid to these creditors may increase proportionally as additional funds are recovered by the Debtor from the collection of receivables owed to ARA Plumbing Inc. and possible setoffs/adjustments to the Priority proofs of claim filed by Local 200.

**SPECIAL NOTE REGARDING PLUMBERS LOCAL NO 200 FRINGE BENEFIT FUND (the "Benefit Fund")** : On February 26, 2025, the Benefit Fund filed a secured claim of $1,236,843.38. The Debtor anticipates that an Agreed Order, pursuant to 11 U.S.C. 522(f), shall be entered by the Bankruptcy Court reclassifying $791,668.00 of this claim as a general unsecured claim.

**RESIDUAL ESTATE OF THE DEBTOR**: The Debtor shall retain his interest in all exempt property and, in the event that the Debtor recovers sufficient funds from the recovery of the receivables of ARA discussed herein to increase the dividend to be paid to Class 2 Creditors to 100%, any non-exempt surplus in such recovery.

The payments to cover initial cash required on the Effective date of the Debtor's Plan will come from the net proceeds of sale of the Debtor's non-exempt Florida property, the

net proceeds of the Debtor's non-exempt property sold by ARA and any receivables of ARA recovered by the Debtor.

It should be noted that all expenses incurred by the Debtor from the date on which the Voluntary Petition was filed and the date when Orders for Relief were entered through the date hereof, were paid by the Debtor in the ordinary course of business. However, in the event that such claims may exist, they shall be treated as administration expenses. In addition, the Debtor shall pay all administrative fees to the Office of the United States Trustee which may accrue up to and including the date that a Final Decree is entered by the Bankruptcy Court in this case.

D.  <u>ANALYSIS OF PRE-PETITION PAYMENTS</u>

The Debtor's attorney has investigated, based on information provided by the Debtor, whether there have been fraudulent conveyances or preferences. The Debtor has conducted an analysis of preferences and insider preferences made during the year preceding the filing of the petition herein as those terms are defined by the Bankruptcy Code and has identified certain preferences as therein defined that have been outlined in the Debtor's Summary of Post-Petition Operations discussed above. Further, the Debtor has conducted an analysis of fraudulent

conveyances made during the four years preceding the filing of the petition herein as that term is defined by the Bankruptcy Code and has determined that there have been no fraudulent conveyances as therein defined other than the pre-petition transfer of $97,759.00 by the Debtor to his spouse which shall be deposited in the Debtor's DIP account from the spouse's distributive share of the proceeds of sale of the jointly held Florida property.

### D.  MEANS FOR EXECUTING THE PLAN

The Debtor estimates that the cash required to confirm the Plan will total approximately $_____.  The monies needed on confirmation consist of $27,500.00 in professional fees, estimated administrative fees which may be owed to either the Office of the Unites States Trustee or to the Clerk of the Court at the time of confirmation and any taxing authority relating to a post petition tax obligation, along with $_____ as the initial aggregate installment to creditors.  The Debtor proposes to raise these monies from the proceeds of sale of the two properties and the recovery of receivables owed to ARA discussed above.  Prior to the confirmation of the proposed plan, the Debtor shall deposit and maintain the aggregate sum of $_____ in its Debtor-In-Possession account earmarked for the above distributions, or

in the alternative deposit such sum in escrow with its counsel prior to confirmation.

The Debtor's plan requires a total average monthly payment to its creditors in the approximate amount of $_____. These funds shall be derived from exempt retirement income of the reorganized Debtor. Annexed hereto as Exhibit "C" is a pro-forma of the Debtors' monthly projections for the next twelve months. The following is an explanation of the projections and should be read in conjunction with the projections.

The Debtor's projected income figures represents an average of the income that the Debtor has produced over the period that it has been in Chapter 11. A review of Exhibit "B" sets forth the monthly revenues generated by the Debtor since the filing of the instant case. The Debtor believes that the revenue that it has produced post-petition is typical of its financial affairs and further believes that it shall remain relatively constant throughout the life of the plan.

The Debtors' projected expenses are broken down line by line in the Pro-Forma. The Debtors have provided for an annual 3% increase for most operating expenses to provide for the inevitable rate increases. Finally, the Debtor have also

provided for annual 3% increases in their Other expenses, as a precautionary measure.

As can be seen from a review of the Exhibit "C", the Debtor should generate sufficient net disposable income to afford it to remit the payments required by its plan of reorganization. Thus, the Debtor believes that their plan of reorganization is feasible and that the Plan shall not be followed by the further need for reorganization.

E. <u>PLAN PROVISION FOR THE ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS</u>

All executory contracts and/or leases not specifically assumed herein are rejected as of the Confirmation Date. The Debtor anticipates that it will not be assuming any leases.

F. <u>DISBURSING AGENT</u>

The Debtor shall serve as its own disbursing agent for all payments to unclassified, Class 1 and Class 2 creditors.

## G.  RETENTION OF JURISDICTION

Until Consummation, the Court shall retain jurisdiction over the Debtor's case under the provisions of the Bankruptcy Code, including, without limitation, Section 1142 (b) thereof and the Bankruptcy Rules, to insure that the intent and purpose of the Plan are implemented.  Without limiting the foregoing, the Court shall retain jurisdiction for the following purposes:

    a.  To consider any modifications for the Plan pursuant to Section 1127 of the Bankruptcy Code;

    b.  To hear and determine:

        (I)    All controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

        (ii)   All causes of action which may exist on behalf of the Debtor, pending as of the Confirmation Date;

        (iii)  Applications for allowance of compensation and objections to any Claims or interests of any class;

        (iv)   All controversies as provided by the Order confirming the Plan including, inter alia, the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

        (v)    Any and all applications, adversary proceedings and litigated matters which are pending  before the Court, or which may be filed with the Court between the date hereof and Consummation.

H.  NOTICE RELATING TO THE PLAN

Any notice to the Debtor shall be in writing and sent by certified mail, return receipt requested, postage pre-paid, or by hand delivery, addressed as follows:

> Richard S. Feinsilver, Esq.
> Attorney for the Debtor
> One Old Country Road, Suite 347
> Carle Place, NY  11514
>
> Office of the US Trustee - EDNY
> 560 Federal Plaza
> Central Islip, New York 11722
> Attn: Christine H. Black, Esq.

VI.  ESTIMATED LIQUIDATION ANALYSIS[1]

The Debtor's assets consist primarily of its cash on hand, equipment and supplies and accounts receivable. Were the Debtor's case converted to one under Chapter 7, a trustee would be appointed to liquidate the Debtor's estate and make distribution according to the statutory scheme set forth in Section 507 of the Bankruptcy Code. Based upon the foregoing, a complete liquidation of the Debtor's estate would not yield a dividend to Class 2 creditors. A Chapter 7 trustee would first

---

[1]Annexed hereto as Exhibit "D" is a Liquidation Distribution Analysis, demonstrating the proposed result of a Chapter 7 liquidation.

be required to pay the administrative expenses of the estate. In this instance administrative expenses would constitute the trustee's commission, Chapter 7 professional fees, post petition administrative tax liabilities and the professional fees incurred in the Chapter 11. Further, the trustee would be required to pay all secured and priority claims before making any distribution to unsecured creditors.

As can be seen from the foregoing, and inspection of Exhibit "D" (the Liquidation Analysis), after payment of administrative and priority expenses, there would be no funds available for distribution to unsecured creditors. As the unsecured claims against the Debtor's estate total $1,854,098.00, unsecured claimants would not receive any dividend against their allowed claims in a Chapter 7 liquidation. However, the Debtor's plan proposes to pay unsecured claimants a minimum of 1% of their unsecured claims and therefore, the Debtor believes that acceptance of its plan is in the best interest of its creditors.

VII. TAX CONSEQUENCES OF LIQUIDATION
VERSUS REORGANIZATION

The Debtor has been advised by its counsel and accountants that, as a general proposition, pursuant to 26 U.S.C. Section 108, for federal income tax purposes, no amount is to be included in the gross income of the Debtor arising from the

discharge of indebtedness in a Title 11 bankruptcy case. As a consequence, under either Chapter 7 or Chapter 11, there will be no increase in gross income of the Debtor as a consequence of any cancellation of indebtedness that occurs as a consequence of the bankruptcy proceeding. Under the Internal Revenue Code, a taxpayer generally must include in gross income the amount of any discharged indebtedness realized during the taxable year, except to the extent payment of such indebtedness would have given rise to a deduction. However, such amounts are not included in income where the discharge of indebtedness is pursuant to a plan approved by the Bankruptcy Court in a case under the Bankruptcy Code. Instead, the amount of discharged indebtedness which would otherwise have been required to be included in income will be applied to reduce certain tax attributes of the taxpayer in the following order, net operating losses, general business credit carryovers, capital loss carryovers, the taxpayer's basis in property, and foreign tax credit carryovers. Under the Plan, holders of Allowed Claims in Class 1 will be paid the full amount of their Allowed Claims. The satisfaction of such Claims pursuant to the Plan should not, therefore, result in discharge of indebtedness or other income to the Debtor. The satisfaction of Allowed Claims in Class 2 (Unsecured Claims) will give rise to discharge of indebtedness and a concomitant reduction in Debtor's tax attributes.

## VIII. <u>VOTING ON THE PLAN</u>

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired. In this case, the Plan Proponent believes that the following classes are impaired and, as such, therefore, have the right to vote to accept or reject the Plan: Class 1 - Secured Claim of Local 200; and Class 2 - General Unsecured Creditors.

<u>What Is an Allowed Claim or an Allowed Equity Interest?</u> Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (I) the Debtor has scheduled the claim on the Debtors schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the

Coutt, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure. The deadline for filing a proofs of claim was March 20, 2025.

<u>What Is an Impaired Claim or Impaired Equity Interest?</u>
As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

<u>Who is Not Entitled to Vote</u>. The holders of the following five types of claims and equity interests are not entitled to vote: (a) holders of claims and equity interests that have been disallowed by an Order of the Court; (b) holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes holders of claims or equity interests in unimpaired classes; [c] holders of claims or equity interests in unimpaired classes; and (d) holders of claims entitled to priority pursuant to Sections 507(a)(2), (a)(3) and (a)(8) of the Code. **Even If You Are Not Entitled to Vote on**

**the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.**

<u>Who Can Vote in More Than One Class?</u> A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

<u>Treatment of Nonaccepting Classes</u>. Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan. Although the Debtor's position is that a cramdown shall not be required, you should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

The Bankruptcy Court has scheduled a Hearing on the Confirmation of the Plan for _____, 2025 at 10 a.m., or as soon thereafter as counsel can be heard. Those creditors whose claims or interests are impaired may vote on the Plan by completing and mailing the enclosed Ballot to:

Richard S. Feinsilver, Esq.
Attorney for the Debtor
One Old Country Road - Suite 347
Carle Place, NY  11514

so that it is received on or before _____, 2025 which the Bankruptcy Court has fixed as the last date on which votes on the Plan may be delivered. As a creditor, your vote on the Plan is important. In general, in order for the Plan to be deemed accepted and thereafter confirmed ("Confirmation"), at least two-thirds (2/3) in amount and more than one-half (½) in number of allowed claims of each class of creditors who vote and who are impaired under the Plan must cast their vote to accept the Plan. §1124 of the Bankruptcy Code sets forth what constitutes an "impaired" class. A class of claims or interests are impaired under a plan of reorganization if the plan proposes to alter the legal, equitable or contractual rights to which the claim or interest entitled its holder. However, notwithstanding any contractual provisions or applicable laws that entitle the holder of the claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default, a class of claims shall be considered "unimpaired" if 1) the plan provides for the curing of the effect of a default  2) the plan

provides for the reinstatement of the maturity of such claim or interest as such maturity existed before such default   3) the plan provides for the compensation of the holder of such claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and 4) the plan does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan of reorganization, including compliance with the requirements of Chapter 11, various disclosure requirements, as well as the requirements for acceptance hereinabove described.  It is believed that the Debtor has substantially complied with Section 1129(a) of the Bankruptcy Code.  The section goes on to set forth requirements that at least one impaired class accept the plan and that confirmation is not likely to be followed by liquidation or the need for further reorganization.  These requirements are also being met.

Section 1129(b) sets forth various additional requirements, including the requirement that the plan be "fair and equitable" and that the Plan provide each holder of claims or interests with payments in accordance with the priorities set

forth in the Bankruptcy Code. The Debtor also believes that it and its plan are in compliance with section 1129(b).

## IX. <u>CONCLUSION</u>

In light of the foregoing, the Debtor submits that the First Amended Plan, a copy of which is annexed hereto a Exhibit "A", is in the best interests of creditors and is feasible and recommends the acceptance of same.

Dated: July 8, 2025
      Carle Place, New York

                      S/Robert P. Ruggiero Sr
                      _____
                      Robert P. Ruggiero, Sr.

APPROVED AS TO FORM:

    s/Richard S. Feinsilver
_____
    Richard S. Feinsilver, Esq.
    Attorney for Debtor
    One Old Country Road, Suite 347
    Carle Place, New York  11514
    (516) 873-6330

Ruggiero.disc.1.wpd

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X

In re:                                    Chapter 11

ROBERT P. RUGGIERO SR                      Case No. 25-70416-las


             Debtor.                       Hon. Louis A. Scarcella
-------------------------------X

PLAN OF REORGANIZATION

ARTICLE I: SUMMARY


    This Plan of Reorganization (the "Plan") under Chapter 11 of
the Bankruptcy Code (the "Code") proposes to pay creditors of
Robert P. Ruggiero, Sr. from the net proceeds of sale of the
debtor's non-exempt real property, the recovery of various
receivables owed to the debtor's company, ARA Plumbing Inc. and,
as required, periodic capital contribution from the non-exempt
assets of the Debtor.

    This Plan provides for two (2) classes of claims: (1) The
Secured Claim of Plumbers Local Union No. 200 ("Local 200") and
(2) General Unsecured Claims.  The individual debtor shall not
receive any dividends under the Plan.  Unsecured creditors
holding allowed claims will receive distributions, which the
proponent of this Plan has valued at one (1%) percent in a lump
sum payment on the Effective Date of this Plan. The Plan provides
for the payment of administrative expenses which shall be paid in
full, on the effective date of the Plan. Secured claims shall
retain their respective liens and be paid in full from the
proceeds of sale of the Debtor's property located at 11 Linden
Street, Selden, New York.  General unsecured claims are to be
paid a dividend of one (1%) of allowed unsecured claims in cash
on the Effective Date.  Both classes of claims are impaired and
will have the right to vote to accept or reject this Plan.

    All holders of priority claims should refer to Article III
of this Plan for information regarding the precise treatment of
their claims. A disclosure statement that provides more detailed
information regarding this Plan and the rights of creditors and
priority claim holders has been circulated with this Plan.  **Your
rights may be affected. You should read these papers carefully
and discuss them with your attorney, if you have one. (If you do
not have an attorney you may wish to consult one).**

## ARTICLE II: CLASSIFICATIONS OF CLAIMS AND INTERESTS

2.1  All allowed  claims entitled to priority under §507 of the
Code (except administrative expense claims under §507(a)(2); gap
period claims in an involuntary case under §507(a)(8) and
priority tax claims under §506(a)(8) of the Code.

Class 1.   Secured Claim of Local 200.
Class 2.   General Unsecured Claims.


## ARTICLE III: TREATMENT OF ADMINISTRATIVE EXPENSES,
## U.S. TRUSTEE FEES, AND PRIORITY TAX CLAIMS


3.1  Administrative Expense Claims. Each holder of an
administrative expense claim allowed under §503 of the Code shall
be paid in full on the effective date of the Plan in cash, or
upon other terms as may be agreed upon by the holder of the claim
and the Debtor.

3.2  Priority Tax Claims. Each holder of a priority tax claim
shall be paid the total value, as of the effective date of the
Plan, with interest thereon, over a term not to exceed five years
from the petition date.

3.3  United States Trustee Fees. All fees required to be paid by
28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be
timely paid until the case is closed, dismissed, or converted to
another chapter under the Code.  Any U.S. Trustee Fees owed on or
before the effective date of this Plan will be paid in full on
the effective date.


## ARTICLE IV: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN


4.1  Claims and interests shall be treated as follows under the
Plan:


Class 1.   Secured Claim of Local 200 - The secured Claim of Local
200, in the amount of $456,875.00, will be impaired by this Plan
and, as such, Local 200 is therefore entitled to vote to accept
or reject the Plan. Local 200 shall retain its lien against the
Debtor's real property pursuant to 26 U.S.C. Section 6321. The
Plan proposes to pay the Secured Class up to the secured portion
of such claim including interest accrued thereon at the

prevailing rate of interest and will shall be paid in cash, from the proceeds of sale of the Debtor's homestead located at 11 Linden Street, Selden, New York.

Class 2. General Unsecured Claims, whose claims total $1,854,098.00, will be impaired by this Plan and are therefore entitled to vote to accept or reject the Plan. General Unsecured Creditors will be paid one (1%) percent of the amount of their allowed claim in cash on the Effective Date. The aggregate payment to Class 3 creditors shall be $18,540.98.


## ARTICLE V: ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1 Disputed Claims. A disputed claim is a claim that has not been allowed of disallowed (by a final non-appealable order), and as to which either: (I) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.


## ARTICLE VI: PROVISIONS FOR EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

6.1 Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contract and/or unexpired leases effective upon the effective date of the Plan as provided in Article VII or the date of entry of any order confirming the Plan. The Debtor has cured all monetary defaults under the executoly contract or unexpired lease that is to be assumed in accordance with the terms and conditions that are either (a)agreed to by the non-Debtor party to such executory contract or unexpired lease or (b)determined by the Court. The Debtor assumes the following executory contract and/or unexpired leases effective upon the effective date of the Plan as provided in Article VII or the date of entry of and order confirming the Plan: None

(b)  The Debtor will have conclusively be deemed to have rejected all executory contracts and or unexpired leases not expressly assumed under section 6.1 (a) above, or before the date of the order confirming the Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later seven (7) days of the order confirming the Plan.

## ARTICLE VII: MEANS FOR IMPLEMENTATION OF THE PLAN

7.1  The funds required to pay the initial cash required on the Effective date of the Debtor's Plan will be sourced from the net proceeds of sale of the Debtor's non-exempt Florida property, the net proceeds of the Debtor's non-exempt property sold by ARA and any receivables of ARA recovered by the Debtor.

## ARTICLE VIII: GENERAL PROVISIONS

8.1  Definitions and Rules of Construction. The definitions and rules of construction set forth in §101 and §102 of the Code shall apply when terms defined or construed in the Code are stated in this Plan.

8.2  Effective Date of the Plan. The effective date of the Plan is the eleventh business day following the date the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that day on which no stay of the confirmation order is in effect, provided  that the confirmation order has not been vacated.

8.3. Severability.  If any provision  in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.4  Binding Effect.  The rights and obligations  of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.5. Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.6. Controlling Effect. Unless the rules of law or procedure is supplied by Federal Law, (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York

govern the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise provided for in the Plan.

8.7. Corporate Governance. Pursuant to §1123(a)(b) the Debtor as a New York corporation, will amend its charter for the inclusion in its charter, a provision prohibiting the issuance of nonvoting equity securities.


ARTICLE IX: DEFAULT


9.1 The following shall constitute events of default under the Plan if said events continue uncured for a period of thirty (30) consecutive days after notice of said default is given to the Reorganized Debtor as provided in the Plan:

(a) a petition is filed by or against the Reorganized Debtor under any chapter of the Bankruptcy Code or any proceeding is instituted by or against the Reorganized Debtor under any applicable state law for the appointment of a receiver, liquidation or dissolution of the Reorganized Debtor, or the Reorganized Debtor makes an assignment for the benefit of its creditors; provided, however, the Reorganized Debtor shall have the right to contest and defend in good faith by appropriate proceedings properly initiated and diligently conducted, any such petition or proceeding so filed against it, and no default shall be declared hereunder pending entry of a Final Order or judgment adverse to the Reorganized Debtor, so long as the Reorganized Debtor is in substantial compliance with the other substantive provisions of the Plan.

(b) the Debtor or the Reorganization Debtor fails to perform or absolve or breaches any of the covenants, representations or warranties contained herein.

© the Reorganized Debtor fails to make any distribution as provided in the Plan.

(d) If the debtor (defined in this paragraph to also include any successor in interest): fails to (a) make to the IRS any deposit or payment of any (1) currently accruing employment tax liability, (2) tax or (3) payment required under this plan by the due date of such deposit or payment, or (b) file any required Federal tax return by the due date of such return, then the United States may declare that the debtor is in default upon notice to the debtor. Failure to declare a default does not constitute waiver by the United States Treasury of the right to declare that the debtor is in default. If the United States Treasury declares the debtor to be in default and full payment is not made or any required return is not filed within (30) days of such notice, then the entire imposed liability, together with any unpaid current liabilities,

shall become due and payable immediately, the IRS may collect
any unpaid liabilities through the administrative collection
provisions of the Internal Revenue Code or by any other
procedure authorized by law, and any automatic stay under 11
U.S.C. Sec. 362(a) in effect is lifted for this purpose
without further order of the Court.

9.2 The occurrence of any event of default as defined in
paragraph "9.1" of the Plan shall entitle any holder of an
Allowed Claim which Claim has not previously been satisfied in
full pursuant to the provisions of the Plan, upon ten (10) days
written notice to the Debtor, pursuant to the provisions of the
Plan, to declare the Plan terminated and of no further force and
effect, and all of the distributions to holders of Allowed
Claims, pursuant to Article IV of this Plan shall then become
immediately due and payable. The failure or delay to declare an
event of default shall not constitute a waiver or release of any
right subsequently to declare the default by reason of such
events or any other prior subsequent events of default.

- INTENTIONALLY LEFT BLANK -

## ARTICLE X: DISCHARGE AND DISCLOSURE

10.1 Discharge. On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debts: (I) imposed by this Plan: (ii) of a kind specified in §1141(d)(6)(A) in a timely complaint was filed in accordance with Rule 4007[c] of the Federal Rules of Bankruptcy Procedure: or (iii) of a kind specified in §1141(d)(6)(b).

Dated: Carle Place, New York
     July 8, 2025

                              S/Robert P. Ruggiero

                              Robert P. Ruggiero Sr

APPROVED AS TO FORM:

      s/Richard S. Feinsilver
By:_____
   Richard S. Feinsilver, Esq.
   Attorney for Debtor
   One Old Country Road, Suite 347
   Carle Place, New York  11514
   (516) 873-6330

EXHIBITS B, C, D

TO FOLLOW